[SUNBURY, JUNE 25, 1829.]

## CRAWFORD *against* JACKSON.

### APPEAL.

Where there is a demurrer to parol evidence, of a fact, which is not evidence of any other fact, but itself a substantive ingredient of the case, a party may be required to join in demurrer.

On a demurrer to parol evidence, if the plaintiff refuses to join in demurrer, except on terms which the court disapproves, the plaintiff's evidence must be considered as withdrawn, and the jury must find a verdict for the defendant.

APPEAL from the Circuit Court, sitting in *Huntingdon* county.

*John Crawford*, brought an action of *indebitatus assumpsit* in the Common Pleas of *Huntingdon* county, against *William Jackson*, which was removed into the Circuit Court, and tried before His Honour Judge SMITH, on the 22d of *August*, 1828.

The following evidence was given by the plaintiff.

*John M'Cahan*, sworn.—On the 13th of *April*, 1819, *John Crawford* called at my house; told me he was likely to get into a dispute with Mr. *Beatty* about whiskey he had sold to *Beatty*; said he was afraid he would have to sue him; said he was an old acquaintance; did not like to sue him. I told him I would try and get the matter accommodated; I directed him to come back next day; I would send for *Beatty*, who lived four miles out of town; I sent for *Beatty*, they both met the next day at my house; I took up their accounts, heard each of their stories, and struck a balance which they both appeared to be satisfied with; there was something said

(Crawford *v.* Jackson.)

about the payment. I took *Crawford* to the end of the house; I advised him, if he did not stand in need of the money, as I knew the money was to come from *Jackson* to *Beatty*, to take an assignment of a judgment, that *Jackson* held against *Gersham Lambert*. I had been an arbitrator and knew the circumstance of the judgment; *Crawford* replied, he did not stand in need of the money, and we returned into the house. I mentioned the arrangement to Mr. *Beatty*, that I had proposed to *Crawford;* he was satisfied with it, and we all went to *Jackson's* house together; before I left the house, I put two bonds in my pocket, (*Beatty's* papers were all in my possession,) due by *Jackson* to *Beatty;* the arrangement was mentioned to *Jackson;* we all went together to the prothonotary's office; *Jackson,* when there, asked for his bonds; I took one out, on which he had made a partial payment, and made a calculation of the balance due; gave that one up to him, and endorsed a credit on the other, for the balance of *Crawford's* account; then this endorsement was put on the record, and signed by Mr. *Jackson.*

*William Jackson*      No. 22, *April*, 1818.
    v.         }   Summons debt by bond—
*Gersham Lambert.*    Rule of reference.

Report filed the 15th of *August*, 1818: find for the plaintiff, four hundred and sixty-four dollars and seventy-six cents, interest from the 5th of *August*, 1818; plaintiff agrees to a stay of execution until the 1st of *April*, 1819; judgment, plaintiff to pay all costs.

Assignment.

This judgment for the use of *John Crawford*, 14th of *April*, 1819.

Test, *William Steel.*

    Signed.     *William Jackson.*

The assignment is in *Steel's* hand-writing. We then dispersed, and I heard no more of the matter for several months. Mr. *Crawford* came into my office, and said he had just heard that *Lambert* had assigned all his property to his children before this judgment, and was not worth any thing. I told him I was a good deal surprised at it. In the evening I went down to Mr. *Jackson's*, took him into a front room, and told him what *Crawford* had mentioned to me; he appeared to be surprised at the information too. I stated my opinion, that he was liable for the money to *Crawford*, and that he ought to adopt immediate measures to secure himself. *Lambert* lived about five miles below this place, and I advised him to go to him, and try to get possession of some bonds he had on people in *Jersey*. *Jackson* said if he would have to pay that money it would be an injury to him, as he had intended to pay *Beatty* in the spring, and he would not be able to do so. I advised him to take legal advice on the subject; and told him if he

(Crawford *v.* Jackson.)

would come up on Monday morning, we would examine the deeds. I saw him on Monday; he had seen Mr. *Smith* in the meantime, and he then thought differently on the subject; my application to *Crawford*, was on *Jackson's* account; it was a voluntary act of my own, and not of Mr. *Crawford's* seeking; I do not recollect what conversation took place at the time of the assignment; they were all my friends, and I wanted to have the matter settled all round without a law suit; *Jackson* demanded his bonds before he signed the assignment; Mr. *Beatty,* Mr. *Crawford, Jackson,* and myself, were all there at the time of the assignment; I was under the impression that he was liable, and he appeared to be so too; but, whether from my conversation or not, I do not know.

*William R. Smith,* Esq. sworn.—I issued this *præcipe, (præcipe,* for *Fieri Facias No.* 83, *January* 7th, 1820, *William Jackson* v. *Gersham Lambert,* shown witness.) I was the attorney in the original suit; I never was the attorney of Mr. *Crawford,* and received no directions from Mr. *Crawford;* I have no distinct recollection of the directions given by Mr. *Jackson* to me; the *scire facias* was not issued by me.

*Patrick Guin,* sworn.—*Gersham Lambert* owed me a pretty large sum of money, and if I had not had his son bound for it, I would have got nothing. I did not know at the time I lent him the money, that he had conveyed away his property. At the time of my judgment, he was not worth any thing. In 1819, he had conveyed away his property; I issued a small execution against his personal property, but the bank had issued on the same day; I having the son, got a part of my money.

*Gersham* and *David Lambert* are both dead; I believe both were insolvent.

The plaintiff also gave in evidence several deeds and records, which are not now material, and rested. Whereupon the defendant, by his counsel, demurred to the evidence. The plaintiff's counsel then asked the court to require the defendant's counsel to admit upon record, the inference, stated in the paper filed, marked A, previous to their joining in demurrer, which paper is in the following words:

*John Crawford*
  v.   } In the Circuit Court of *Huntingdon* county.
*William Jackson.*

In this case the defendant's counsel, having demurred to the evidence of the plaintiff, the plaintiff's counsel ask the court to require the defendant's counsel to admit upon record, previous to their joining in the demurrer, the inference which may be drawn by the jury, from the circumstance of *Beatty, Jackson,* and *Crawford,* being all present when the assignment given in evidence was made; from the nature of the transaction itself; from *William Jackson's* (the defendant's) conduct, (as proved by *John McCahan*) at the

(Crawford *v.* Jackson.)

time he called upon him, to request him to take some steps to se-- cure himself against *Lambert's* insolvency; and from the circum- stance of Mr. *Jackson's* attorney, *William R. Smith,* issuing the execution on the assigned judgment, and having no direction or au- thority from Mr. *Crawford* to do so; that it was the understanding, and agreement of *Crawford* and *Jackson,* at the time of the as- signment of the judgment against *Lambert,* that *Jackson* was to be liable to *Crawford,* if the judgment proved ineffectual, to col- lect the money from; and if the defendant's counsel refuse to admit this inference, and if the court refuse to compel them to admit it, the plaintiff's counsel refuse to join in demurrer.

                    *J. Geo. Miles,* and *John Blanchard,*
                         Attornies for the plaintiff.

23d of *August,* 1828.

After this paper had been filed by the plaintiff's counsel, the court refused to require the defendant to admit on record the infe- rence therein stated; and the plaintiff's counsel refused to join in demurrer; whereupon the court instructed the jury, that the plain- tiff, by refusing to join in demurrer, had withdrawn the evidence, and, that there was therefore no evidence before the court and jury.

After the jury had given a verdict for the defendant, the plain- tiff's counsel moved the court for a new trial, for the following rea- sons:

1. Because the court erroneously withdrew the evidence, which was given in the cause, from the jury, and instructed them that there was no evidence before them on which they could decide.

2. Because the court, erroneously compelled the plaintiff to sub-- mit to having the evidence withdrawn from the jury, or to join in the demurrer of the defendant, notwithstanding the plaintiff's counsel asked the court to require the defendant's counsel to admit the inference drawn, from the circumstances stated in the paper filed, marked A., (as per paper filed,) previous to their joining in the said demurrer.

3. Because the court refused to require the defendant's counsel to admit the inference, which the plaintiff's counsel asked the court, (as per paper filed marked A.,) to require them to admit from the circumstantial evidence stated in that paper, previous to the plain- tiff's joining in the demurrer of the defendant to the evidence, and because the court withdrew the cause from the jury, on the plain- tiff's counsel refusing to join in the said demurrer, for the reasons stated in the said paper filed, marked A.

4. Because the verdict is against law, and the justice of the cause.

The motion for a new trial was overruled, from which decision the plaintiff appealed.

The argument was conducted by *Miles* and *Blanchard,* for the appellant, who contended, that the court ought to have discharged the jury, and compelled the plaintiff to join in demurrer, and cited, 1 *Tid. Pr.* 315. *Duerhagen* v. *The United States Insurance*

(Crawford *v.* Jackson.)

*Company*, 2 *Serg. & Rawle*, 185. *Dickey* v. *Schreider*, 3 *Serg. & Rawle*, 413. *Lessee of Maus* v. *Montgomery*, 11 *Serg. & Rawle;* 329. 7 *Cranch*, 565. *Bull. N. P.* 313. 2 *Roll's. Rep.* 117. *Alleyn*, 18. *Cro. Eliz.* 682. *Patrick* v. *Hallett*, 1 *Johns. Rep.* 245. *Lessee of Ross* v. *Eason*, 4 *Yeates*, 54. *Snowden* v. *The Phœnix Insurance Company*, 3 *Binn.* 457. *Peake's Ev.* 4, (second edit.)

*Potter, contra,* answered, that the court possessed no power to compel a joinder in demurrer; and, could have adopted no other course than that taken. He cited *Jackson* v. *Crawford*, 12 *Serg. & Rawle*, 165. *S. C.* 14 *Serg. & Rawle*, 290. 4 *Cranch*, 221. 1 *Wash.* 151, 220. 2 *Wash.* 211. 1 *Bibb.* 612.

The opinion of the court was delivered by

Gibson, C. J.—*Baker's Case*, 5 *Co.* 104, is an explicit authority, that a refusal to join in a demurrer properly tendered, is a waiver of the evidence; to give effect to which, it is the business of the court to direct the jury to disregard it. But, whether a party can properly tender a demurrer to parol evidence, seems not so clear. The weight of the authorities seems to be, that where such evidence is certain, and as little susceptible of variance as written evidence, it stands on the same footing. Where it is loose, and made up of circumstances, which may be urged to a jury with more or less success as evidence of other circumstances, it certainly is not settled, that it may be made the subject of a demurrer, without the assent of both parties. Yet, occasional expressions are not wanting to favour an opinion entertained by some, that the party producing such evidence, may be required to join, on having secured to him the benefit of every circumstance which the evidence might legitimately conduce to prove. The demurrer to evidence originally grew out of necessity; there having been no other means of securing to a party, the right of having the law of his case decided by the constitutional tribunal, when there was in reality no fact in dispute; and it fell into disuse only when the increasing liberality of the *English* judges in granting new trials, afforded a more convenient method of obtaining the judgment of the superior courts at *Westminster*. With us, there is perhaps, some reason why the use of it should be retained, and even encouraged, inasmuch as the opinion of the court in the last resort, cannot be had on a motion for a new trial in the Common Pleas. No one can be prejudiced by it, as it is, at best, a desperate remedy for him who has recourse to it; and it would be hard to deprive him of the miserable advantage it affords in comparison with a trial before a prejudiced or predetermined jury. Be that as it may, our province is not to legislate, but to pronounce the law as we find it, the legislature being alone competent to alter it where there is room to dissent from the reason or policy of its provisions. Without intimating an opinion as to any other case, then, it may be affirmed, that where there is a demurrer to evidence of a fact, which is not evidence of any

What then, was the evidence here? At no time previous to the assignment, had *Jackson* a transaction with *Crawford*. *Beatty*, to whom *Jackson* is indebted, comes to him along with *Crawford*, and desires him to assign his judgment against *Lambert*, in payment of his debt to *Beatty*. *Jackson* does not open his lips to any one, except to require his bonds of *Beatty;* one of which being delivered up, and a receipt for the residue endorsed on another, he marks, by direction of *Beatty*, the judgment to *Crawford's* use. This comprises every title of the transaction in the presence of the parties. The judgment having afterwards been found worthless, a common friend calls on *Jackson*, who appears to think himself liable (the witness does not say *to whom*) for the amount of the judgment; and he afterwards attempts to collect the money from *Lambert*. Now it is not pretended, that there was any implied contract of warranty, on which *Crawford* could have recourse to *Jackson;* and it has already been twice decided, that the facts which happened at the time of the transfer, give no colour to the pretext of a special agreement. Indeed, those facts are not relied on by *Crawford* himself, who claims the inference of such an agreement, from *Jackson's* subsequent admission of liability to some one. But this admission is attributable to a belief, that he remained liable to *Beatty;* who, had he not agreed to accept of the assignment to *Crawford* as satisfaction, might still have recovered his debt, on the ground, that the means of payment which were put into his hands, or (what is the same) into the hands of a person designated by him, had proved unavailing. But, the delivery of the bond would be decisive proof, that he had consented to consider the assignment as satisfaction; and, if *Crawford*, also has barred himself from proceeding against *Beatty*, he cannot get round the impediment, by going against *Jackson*, who did not consent to become liable to him. *Jackson*, therefore, was mistaken in supposing himself liable to any one; and to infer the existence of a secret agreement of warranty, from acts done under a mistaken belief of liability, and that, too, in the teeth of a witness who testifies to the contrary, would be forced and unnatural. A jury may make all natural and reasonable deductions; but, they cannot madly assume facts at pleasure, and without the colour of evidence. The subsequent conduct of *Jackson* is attributable to an imaginary liability to *Beatty*, not to the consciousness of a secret agreement with *Crawford*, for which there is not the least ground of suspicion. It seems, therefore, that the judge who tried the cause did right in directing the jury, that the refusal to join in the demurrer, was a waiver of the evidence.

HUSTON, J. dissented. TOD, J., having been of counsel in the cause, took no part in the decision.

Judgment affirmed.