Morgan, J.
The plaintiff alleges that she is a creditor of her father, Jacob EL Morrison, for sums amounting in the aggregate to $16,275 22, exclusive of interest; that said indebtedness is established by a judgment rendered on the first April, 1868, by the Seventh Judicial District *402 Court, parish of Point© Coupee, in favor of petitioner and her sister Camille on their opposition to the account of tutorship rendered by their father; that by said judgment his aggregate indebtedness to herself and sister was fixed at $17,994 20, exclusive of interest, half of which was due to petitioner, and the other half to her said sister; that the latter having died since the rendition of said judgment, petitioner’s share thereof, owing to the portion by her inherited of her sister, amounts as aforesaid to $16,275 22, besides interest. That for the payment of the said sum, in capital and interest, the petitioner has a legal mortgage on all the immovable property of the said J. H. Morrison, dating and taking effect from the third day of May, 1852, as recognized and decreed in the judgment aforesaid, which was duly recorded in the books of the recorder of mortgages for the parish of Pointe Coupee, and stands inscribed thereon since the sixteenth April, 1868.
Subsequent to the year 1852, Morrison purchased several tracts of land in the parish of Pointe Coupee. In February and April, 1860, these lands were mortgaged to the Citizens’ Bank.
One of the tracts of land was purchased from G. P. Ware, on the seventh August, 1856. Part of the purchase price was represented by notes of which Smith & Co. held $24,170 66.
Plaintiff prays that the plantation referred to be decreed subject to her mortgage; that her mortgage be declared to be superior in rank to any and all the mortgages which the Citizens’ Bank and Smith may have, and that she be entitled to enforce her mortgage claims by the seizure and sale of the plantation in preference to, and with priority over, any claims held or set up by the bank and Smith & Co.
The bank answers:
First — That the plaintiff’s judgment against her tutor is null, because it was rendered and signed in vacation.
Second — That if good between the parties, it was rendered by consent, against law and facts, and for the purpose of defeating the respondent’s mortgage claim, and that they are not bound by the same. Further answering, the bank avers the validity of its own mortgage, and denies the tacit mortgage claimed by the plaintiff.
Smith & Co. make- substantially the same defense, alleging further that the mortgage they hold results from the sale of the property by Ware to Morrison, which entitles them to the vendor’s privilege, which, they say, ranks the minors’ mortgage.
Subsequently both defendants filed a peremptory exception to the plaintiff’s demand, on the ground that she has no cause of action, the same having been destroyed by the nonrecording of her mortgage according to law.
First — As to the rendition and signature of the judgment out of term *403 time: It was agreed that the judge who tried the case should take it under advisement and render judgment and sign it after the court should have adjourned.. The parties were competent to make the agreement, and the judgment having been rendered in conformity therewith is good. The cases of Simonds v. Leovy, 21 An. 306, and Hernandez v. James, 23 An. 483, are not authority for the defendants. In neither of them had the judgment been rendered and signed in vacation by consent.
Second — As between the parties, whether rendered by consent or not, the judgment was good. Collusion or fraud would destroy its effects as to third parties, but the collusion or fraud must be established by those who allege it. Of this there is no evidence. It is shown op the part of the defendants that the mother of the plaintiff sued her husband (plaintiff’s father) for a separation of property, and that she obtained judgment against him dissolving the community, and condemning him to pay her a sum which would make the plaintiff’s share in her estate a little over $2000. But this judgment was never executed, or sought to be executed. If not executed, or sought tó be executed, it was nothing, and did not affect the community. 23 An. 572; 1 An. 308; 11 La. 533; 1 R. 432; 4 An. 513; 12 An. 193.
Third — The next question is, has the plaintiff a tacit mortgage 1 It is claimed not, by the defendants, because, they say, her father gave a special mortgage in lieu thereof.
On twenty-ninth December, 1859, the plaintiff’s father applied to the court for permission to substitute a special -mortgage for the tacit mortgage which his children had to secure their rights, the property upon which he proposed to place the special mortgage being described in his petition. A family meeting was ordered to be convened for the purpose of advising whether or not the property offered to be specially mortgaged was sufficient to secure the minors’ rights in principal and interest.
On the same day the family meeting convened. They declared that the property offered was sufficient, and that they had no objection that the general mortgage should be changed into a special mortgage upon the property described in the tutor’s petition. These proceedings of the family meeting were duly homologated by the judge, and the tutor, by the judgment of homologation, was allowed to give the special mortgage on the property offered by him. This on the sixteenth January, 1860.
On the seventeenth January, 1860, the mortgage was duly executed, and it was recorded on the same day.
But here it is contended that the special mortgage, after it was drawn up, was never presented to the judge for his acceptance and sanction, *404 and that, this is contemplated by the act of 1830 and by article 3309 of the Code of 1825.
The aet of 1830 declares that in all cases where special mortgages shall be given by curators or tutors in lieu of the legal mortgage existing in such cases, as recognized by law, it shall be the duty of the judge receiving such special mortgage to cause the property proposed to be mortgaged to be appraised by experts in the same manner as is provided when adjudications of the property of minors are made to the surviving father or mother,'and the said judge shall in no case accept the said mortgage unless the value of the property so appraised shall ‘exceed, exclusive of all prior liens, privileges or mortgages, the amount of the debts or rights of the minors intended to be secured by the said special mortgage, by at least twenty-five per cent, in addition to the amount of the said matter, and including- all interest which may probably accrue.”
Article 3309 of the Code of 1825 declares that “ the judge shall receive the special mortgage offered if he thinks it sufficient, and with the advice ofthe family meeting in the case of a minor or person under interdiction.”
It remains for us now to determine whether the requirements of the laws which we have quoted have been complied with in the present case. Counsel for appellant contends that they have not, because the special mortgage was never presented to the judge for his acceptance and sanction. His position is, that after the mortgage was given it should have been accepted. In support of his position he cites the case of Lesassier v. Dashiell, 17 La. 204. In that case “ no experts were appointed, no previous liquidation of the vendor’s rights was made, and the act of special mortgage was passed by a simple notarial act, which never was accepted by any one, not even by the under tutor; it was not received by the judge as required by article 3309 of the Louisiana Code, and never obtained the definitive sanction of the court of probates, so as to give it the effect contemplated by the decree of homologation.”
In the present instance the rights of the minors had, as it is recited in the petition of the tutor when he asked leave to grant a special mortgage, been ascertained by a judgment rendered on the thirtieth April, 1845, by the Fifth District Court of New Orleans, the then domicile of the parties. The property which the tutor desired to mortgage was described. A family meeting was convened for the purpose of deciding whether the interests of the minors would be protected. Experts were appointed to determine the value of the land proposed to be mortgaged. The family meeting assembled; the experts reported, and it was determined that the security offered was sufficient to protect *405 the minors’ interest, and a mortgage thereon, to take the place of the-general one, was recommended. These proceedings of the family-meeting- were submitted to the judge, who approved them and ordered’ the mortgage to be executed and accepted. It was executed, and it was recorded. In point of fact, therefore, every essential of the law was complied with. The only matter for discussion is, whether after-all the proceedings above related liad taken place, it was still indispensably necessary that the mortgage, after having been executed,should have been presented to the judge, and been by him accepted before the general mortgage was thereby released. We think not. We think that when the judge, under the facts of this case, ordered the mortgage to be executed, he accepted it in the sense of the law, and that all the requirements of the statutes for the protection of minors were complied with. An inspection of the proceedings would, we think, justify any one who proposed to deal with plaintiff’s tutor, in believing that no general mortgage rested upon his property.
This view of the case renders it unnecessary that we should examine the other questions presented.
Judgment affirmed.