IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT, SEPTEMBER TERM 1841.

## Morrison *against* Beirer.

A deed for a lot of ground to " A school-house and congregation thereof, or employers and their heirs, for and in consideration of the natural love and affection which they" (the grantors) " have and bear unto the said school-house, and its congregation and employers thereof," executed by two persons, is not a deed of bargain and sale, but is operative between those who sealed it as a declaration of trust, leaving the title to rest where it was before.

ERROR to the Common Pleas of *Westmoreland* county.

John Beirer against Robert Morrison. This was an action of ejectment for about half an acre of ground. The plaintiff gave evidence as follows :

Jacob Steelsmith sworn. I know the land in dispute. Question by Mr. Foster : — Who lived on the land, of which this was part, in 1803 ? Objected to by defendant; objection overruled by the court, and exception by defendant. I know the lines of the tract, and have known them thirty-five years. Altman owned the adjoining tract; the original line is a marked line; Daniel Williams died in possession of this tract; a farm cleared; large improvement; house and barn; he was one of the oldest settlers; I must have known him four or five years before his death.

II.—11                                                                 (81)

[Morrison v. Beirer.]

Cross-examined—Daniel Williams died between 1802 and 1805. He had given this piece of ground for a school-house before his death. He did not die in possession of this lot.

Jacob Rugh, Jun. As long as I can mind any thing, Daniel Williams lived on that place where he died; I can recollect forty years ago; his death must have been thirty odd years ago.

Plaintiff offered the record of the Orphans' Court—June sessions 1803. Objected to by defendant; objection overruled by the court, and exception taken by defendant.

Petition of the heirs and legal representatives of Daniel Williams, and proceedings thereon, confirming the land to John Williams.

Deed.—John Williams to Philip Drum, for 116 acres and 80 perches, dated 1st of April 1807, for that part allotted to John Williams, acknowledged 4th April 1807.

Record.—Orphans' Court, May 9th, 1823. Petition of Simon Drum, administrator of Philip Drum deceased. Order of sale, 19th of May 1823. Return, 14th of July 1823, sold to John Beirer.

Deed.—Simon Drum, administrator of Philip Drum, to John Beirer, the plaintiff, dated 30th July 1823.

Samuel L. Carpenter affirmed. I made the survey on the 3d of April last, at the instance of plaintiff. I marked the school-house ground. Defendant lives in a little house east of this line. I could not find corner, nor lines. This old draft was put into my hands by plaintiff: " Old draft for the school-house lot, dated 25th February 1796." The line between Altman's and Williams's tracts passes through the centre of the school lot, and throws exactly one-half to the John Williams' tract. Old draft, dated 25th February 1796, read.

Levi Campf. Robert Morrison has been in possession of the lot in dispute fully two years; has his family there. The first year he had a fence around it, and occupied it as a garden. Before he came there it was occupied for a school-house. When the school system commenced it was thrown out of the district. I had a conversation with Morrison, the defendant. He said he would surrender to the proper authority.

The new school-house was built about twelve years ago. There was a subscription, and money was raised in that way. I gave timber. The most of the money was subscribed in the borough— the neighbourhood round assisted in the building of it. Mr. Beirer, the plaintiff, subscribed $5 to the building. The new house is not in the same place where the old one stood; the present house is a little more north. A call was made, by notice in the newspapers, for a meeting at the school-house on the 8th of February 1840; old Mr. Beirer, the plaintiff, was at the meeting, and took part with the rest that were there. John Beirer, Jun., and his father-in-law, Zachariah Pool, were elected trustees of the school. I went to school in the old house in 1810.

[Morrison v. Beirer.]

The defendant offered in evidence the following deed, which was objected to by the plaintiff, and rejected by the court, who sealed a bill of exception.

This indenture, made the 24th day of February, in the year of our Lord one thousand seven hundred and ninety-six, between John Peter Altman and Daniel Williams, both of Hempfield township, Westmoreland county, state of Pennsylvania, farmers, of the one part, and the school-house and its employers, (it is the school-house which is built on the line of said John Peter Altman and Daniel Williams, on a road leads from Greensburg to said John Peter Altman) of the other part, witnesseth that the said John Peter Altman and Daniel Williams, for and in consideration of the natural love and affection which they have and bear unto the said school-house and its congregation, or *employers thereof*, Have given granted, aliened, enfeoffed, and confirmed, and by these presents doth give, alien, enfeoff, and confirm *unto the said school-house and congregation*, all messuage or tenement situate, &c., and also all those parcels of land lying in the above said township and county is also a part of said Peter Altman's and part of Daniel Williams's plantations, beginning at a post over the run before the house, thence a north course twelve rods, to a post, thence a westerly course to a black jack, for a corner, thence south to a post for a corner, thence to the place of beginning is also each long side twelve rods, each short side eight rods, containing one half acre and sixteen rods of land, and all and singular, &c., &c., and all the estate, right, title, interest, property, claim, and demand whatsoever of them the said John Peter Altman and Daniel Williams, of, in and to the said messuage, lands and premises, and of, in and to every part and parcel thereof, with their and every of their appurtenances and writings concerning the said premises only, or only any part thereof now in the hand and custody of the said John Peter Altman and Daniel Williams, To have and to hold the said messuage or tenement, lands, hereditaments, and all and singular the premises hereby granted and conveyed, or mentioned, or intended to be granted and conveyed, with their appurtenances, unto the said school-house and congregation thereof, or employers, their heirs, to the only proper use for a school for ever; and the said John Peter Altman and Daniel Williams, for themselves, their heirs, executors, and administrators, doth covenant, promise, and grant to and with the said employers of said school-house, their heirs and assigns shall, and lawfully from thenceforth for ever hereafter, peaceably and quietly have, hold, use, occupy, possess and enjoy the said messuage or tenement, lands and premises above-mentioned to be hereby granted, for a school-house for ever, also with their and every of their appurtenances, free, clear, and discharged, or well and sufficiently saved and kept harmless of and from all former and other grants, bargains, sales, gifts, jointures, feoffments, leases, dowers, estates, entails, judg-

[Morrison v. Beirer.]

ments, and from all other titles, troubles and encumbrances what-soever, hath made, committed, done, or suffered to be had, made by them John Peter Altman and Daniel Williams, their heirs, executors, administrators, or any other person or persons lawfully claiming, or to claim by, from, or under them, or any or either of them. In witness whereof, &c.

2. Defendant offered to prove, by witnesses, that the inhabitants of the neighbourhood built a school-house on the land in dispute in 1796, and occupied the house and lot for school purposes until the school-house became useless, in 1825, when a new house was built, by subscription, on the lot, of which subscribers John Beirer, the plaintiff, is one. That Daniel Williams, who objected to Beirer's taking *exclusive* possession, was also a subscriber, and paid part of the money for building the new house — that the last house has again been occupied by the contributors, and neighbours, for school purposes, until within three years back, when Morrison, the defendant, went on the lot under the direction of Daniel Williams. That John Beirer, the plaintiff, never was in possession of the lot; that he had always excluded it from his possession by fencing around it. That many of the persons who paid their money toward the building of the house objected to the plaintiff exercising any other right, in relation to the premises in dispute, than a right in common. In connexion with the above, the defendant offered the original subscription-list, containing the names of the contributors, and amount subscribed by them; which evidence, so offered, was objected to by the plaintiff. The court sustained the objection, and overruled the evidence. Defendant excepted.

3. Defendant offered to prove by witnesses, that Henry Welty, John Kuhns, Daniel Williams, John Fleeger, Esq., John H. Isett, Simon Drum, Esq., J. Y. Barclay, Esq., Randal M'Laughlin, Esq., J. B. Alexander, Esq., Dr. John Morrison, John Armstrong, Esq., F. A. Rohrer, Peter Everett, and others, contributors to the building of the school-house on the lot in dispute, signed a remonstrance against any sale of said school-house lot, to which the plaintiff objected; the court rejected the evidence offered, and the defendant excepted.

4. The defendant then offered and gave in evidence the notice signed by John Beirer, Jr. and George Thomas, trustees, as follows:—

"Sir—Being in possession of a certain school-house and lot of ground with the appurtenances, situate in the township of Hempfield, county of Westmoreland, adjoining lands of Barnet Thomas and John Beirer, Sen., belonging to a certain congregation, and of which we are the appointed trustees, you are therefore hereby notified to leave the said premises, and deliver up peaceable possession to us on or before the first day of April next ensuing the

[Morrison v. Beirer.]

date hereof. In witness whereof we hereunto set our hands and seals, this first day of January, one thousand eight hundred and forty.

" To Robert Morrison."

5. Defendant then offered to prove by competent testimony, that John Williams, to whom was allotted, in the partition of Daniel Williams's real estate, that part from which the school-house lot had been stricken, had notice of the deed to the school-house offered in evidence by defendant, dated 24th of February 1796, previous to the partition. Which was objected to by the plaintiff, and the evidence rejected by the court; the defendant excepted.

The court charged the jury as follows :—

" The defendant has shown no title in himself, but he alleges that the title is in certain persons in trust for the purposes of a school. It appears from the testimony, that the house occupied by defendant was built and had been used for a school-house. Williams no doubt gave a license to occupy the ground for a school-house; but there is no evidence that he conveyed; and if he ever had title, that passed to his representative, the present plaintiff. The question here is not between the representatives of Williams and the trustees, if there be any; although there might be no conveyance of the legal estate as against those who wanted the ground for school purposes, the plaintiff might be estopped in equity; but so far as we know of any school trustees, they have also notified the defendant to quit; it is not a question, then, between a person holding the legal estate and his *cestui que trust,* but between such person (if you believe that Daniel Williams died seised) and a mere intruder, who shows no right of any kind, and consequently cannot succeed."

To which opinion of the court the defendant excepted.

Errors assigned:

1. The court erred in admitting the testimony of Jacob Steel-smith, set forth in the bill of exceptions.

2. The court erred, also, in the admission in evidence of the record of the Orphans' Court, containing the partition among the heirs of Daniel Williams; it having been previously proved by plaintiff's witness, that the intestate did not die seised of the land in dispute.

3. The court erred, also, in rejecting the deed of Williams and Altman to the employers of the school.

4. The court erred, also, in rejecting the evidence contained in defendant's third and fourth offers.

5. The charge of the court is erroneous.

*Beaver* and *Kuhns,* for plaintiff in error. The provisions of the statute of charitable uses are in force here and were part of

[Morrison v. Beirer.]

the common law. 2 *Kent Com.* 287; 17 *Serg. & Rawle* 88; 3 *Watts* 70; 5 *Watts* 495; *Prac. in Chan.* 16; 1 *Black. Rep.* 91; 2 *Vern.* 453, 755. If the grantors had a right to convey, and the object of the conveyance can be discovered, chancery will not permit the charitable use to fail for want of a trustee; and in the mean time the legal estate will remain in the grantors, upon whose death it will pass to their heirs at law, to support the trust. 1 *Penn. Rep.* 49; 4 *Wheat.* 673; 2 *Term Rep.* 346; 6 *Pick.* 427; 7 *Pick.* 303.

*Foster* and *Coulter*, *contra*, argued that the deed was void for want of a consideration, and for want of a grantee competent to take, and for the uncertainty who was intended to take. The Orphans' Court has jurisdiction of whatever estate an intestate died seised, and may distribute it. The present plaintiff claims under Williams, who took the land by the decree of the Orphans' Court.

The opinion of the Court was delivered by

GIBSON, C. J.—It is plain that the deed executed by Williams and Altman did not pass the legal title, not only because there was no party to receive it, but because there was no valuable consideration to make it a bargain and sale. On the other hand, it is just as plain that it operated between those who sealed it, as a declaration of trust, leaving the title to rest where it was before. No form of words is necessary to constitute such a declaration, it being sufficient that an intention to create a trust is clear. It may be created by means analogous to a bargain and sale, if there be such a consideration as the law requires in a conveyance, which it would not pronounce merely voluntary; and thus it is said that articles of agreement made before marriage for a settlement, are sufficient to raise a trust without any conveyance of the title. (*Burton's Compend* 420). Now, it cannot be doubted that this deed amounted to an agreement between Williams and Altman to devote the property to the use of the school, the sacrifice of its value on the one side and on the other, being a mutual and valuable consideration for the act. Then the instrument being unexceptionable as to form, and the intent being clear, a chancellor would not let a charity, so circumstanced, fail for want of a trustee; but, in this case, there is no need to call on his powers under the statute of charitable uses, or those he might exercise independently of it, because the parties in whom the legal estate resides, as it did originally, are trustees in being, and competent to execute the trust, though they are devested of the beneficial ownership. That is appropriated to the charity, and the consequences of it are, that the legal estate, instead of being subject to distribution under the intestate laws, descended to the heir at common law; that John Williams, under whom the plaintiff claims,

[Morrison v. Beirer.]

took nothing by the proceedings of the Orphans' Court in that part of the land which is in dispute; and that the plaintiff has not a colourable title to recover even against an intruder. He is neither the legal, nor the equitable owner of the soil; and the court should have admitted the deed of trust to strip him of every thing like pretension. It is evident that he supposed the deed was void, as the court did; and that he attempted to recover, not in subservience of the trust, but in opposition to it; yet even were John Williams the intestate's oldest son, and consequent depositary of the legal title, neither he nor his grantee would be allowed to use it so as to frustrate the object of the charity. A chancellor would control his action, if it were an improper one, and compel him to do his duty with a good grace. In Pennsylvania, we have a less direct, but more efficient, application of judicial power to the subject than immediate compulsion, in the proceeding to remove a refractory trustee and put a more willing one in his place; and should the person in whom the legal title is, refuse to execute the trust in good faith, that course may be taken here: still the trustee for the time being, is the undoubted party to maintain an ejectment against a stranger, in subordination to the trustees or managers of the school. The seventeenth section of the Act of 1836, does no more than authorize the board of inspectors of the district to appropriate such part of the school fund to it as they may think proper, allowing the school to remain under the direction of its trustees. That Statute leaves the question of title where it found it; and an ejectment therefore can be maintained only by him who has the legal or equitable estate. Should the trustee refuse to prosecute an action for the good of the school, it would be the duty of the court to dismiss him, and appoint another. In this instance, the deed would have shown the plaintiff to be a stranger to the title, and it ought to have been admitted.

Judgment reversed.