# McLain *et al. versus* School Directors of White Township.

1. Where an owner of ground devotes it by parol to a public charity, permits it to be improved, encourages the expenditure of money and labour upon it, and allows those interested to enter upon its enjoyment, it is not within the Statute of Frauds; but he would be held, in equity, trustee for those erecting the building, and they trustees for the beneficiaries.

2. Where the boundaries of the lot in such case were not fixed at the time of the dedication, but were reasonably defined at the time of suit, especially if by the donor himself, the gift will be sustained.

4. In Pennsylvania, equity, disregarding the uncertainty of an object of charity, will not suffer it to fail, if it can be made certain by a discretionary power in those who are to apply the grantor's bounty.

5. But chancery will not exercise its powers for individual relief when the parties might, by some slight diligence, make certain the subject of their bargains.

ERROR to the Court of Common Pleas of *Indiana county*.

In the court below this was an action of ejectment by the School Directors of White township, Indiana county, against James McLain and Samuel McMullen, for half an acre of land in said township, with school-house thereon.

In 1847 or 1848 the citizens in the vicinity of the premises wanting a school-house, and the directors hesitating, the neighbours agreed to contribute by private subscription. McLain, the defendant, and John Dougherty owning adjoining land, each agreed to give one-half of the land. It was afterwards agreed by McLain that the lot should be entirely on his land, and a house was erected at a cost of about $130, paid partly by the school

district and partly by the contributions, McLain being one of the contributors. The boundaries were not fixed at the time, but McLain in a few years built a fence north and east—Dougherty's fence was on the south. The school directors used the house for school purposes up to the fall of 1863, when McLain, took possession of it; and this ejectment was brought in December 1863.

Neither party submitted points, and the court (Buffington, P. J.), after stating the facts, charged the jury:—

" There was no deed or contract in writing of any kind; nor was there any certain designation of boundary or limitation to the plaintiffs' rights of occupancy. Hence he alleges that the plaintiffs have no right whatever under the Statute of Frauds; and certainly this is correct at law. Under the evidence in this case the title to the land did not pass to the school directors, nor to the subscribers to the building fund.

" But the plaintiffs, representing the public and the contributors, built the house at an expense very greatly beyond the value of the land, with the full knowledge of defendant that the money was raised for that purpose. He agreed to give the land for the use of the school; he encouraged and contributed to the erection of the building; he induced others to subscribe; he permitted its use and occupation for several years without objection, during which some repairs were made from time to time as they were needed.

" Under these circumstances it would be strange if the law would permit him to seize and take that building, and use it by forcible means, when needed and demanded for the use of the school. Surely a statute that would protect a man in such acts would not be one for the prevention of fraud, but for its encouragement.

" I do not view this as a case of sale or gift; and whether it is sustainable as a privilege or license acquired by the expenditure of money on an express agreement, and thus operating as an estoppel, or as a dedication to charitable uses, or as a declaration of trust for the purposes contemplated, is a matter of indifference.

" I am of opinion, if the jury believe the witness as to the agreement and expenditure, and that the defendant ousted them of possession and seized the property, that a chancellor would relieve and remedy the wrong thus perpetrated, and not permit such a fraud to be practised upon a confiding community."

There was a verdict for the plaintiffs, and the case was removed to the Supreme Court by the defendants.

*A. W. Taylor,* for plaintiffs in error.—Here was only a parol contract for a sale of the land; there was no designation of boundaries. Such contract will not be executed unless it be unjust to rescind it: Postlewait v. Frease, 7 Casey 474; Moore

[McLain *v.* School Directors of White Township.]

*v.* Small, 7 Harris 467.   If reasonable compensation can be rendered, execution of the contract will not be enforced: McQuown *v.* McDonald, 7 Casey 441.   The school-house could be compensated for.   A license to build would be an interest in land and within the statute: Rorick *v.* Kern, 14 S. & R. 271.

*White & Banks*, for defendants in error.—Charities are not considered in this state as affected by the Statute of Frauds, as an individual would be.   Where there is a dedication to such objects, made upon a valuable consideration, the former owner of the land becomes a trustee for the beneficiaries of the charity, and cannot resume the land at his pleasure.   Such has been the ruling of this court, and there is reason for the distinction, as the notoriety of the manner of enjoyment is, in general, full notice to the community of the fact of such dedication and change of equitable ownership.

This might be claimed to be an actual sale: Martin *v.* McCord, 5 Watts 443; Beaver *v.* Filson, 8 Barr 327.   McLain under the circumstances would be estopped: Cust *v.* Jack, 3 Watts 244; Zimmerman *v.* Wingert, Id. 401.

The opinion of the court was delivered, January 8th 1866, by

AGNEW, J.—The principles which rule this case were settled in Martin *v.* McCord, 5 Watts 493; School Directors *v.* Dunkleberger, 6 Barr 29; and Beaver *v.* Filson, 8 Id. 327: and recognised in Morrison *v.* Baire, 2 W. & S. 81; Kirk *v.* King, 3 Barr 436; Wright *v.* Linn, 9 Id. 433; McKissick *v.* Pickle, 4 Harris 140; and Price *v.* Maxwell, 4 Casey 23.

When an owner of ground devotes it to a charity, public in its nature, and permits those to whom he commits control to improve it for the object of the dedication, giving to it his consent and countenance, and encouraging his neighbours and others interested in the use to expend their money and labour in its improvement, and to enter in good faith upon its enjoyment, for the purposes intended, the case is not within the Statute of Frauds.   Though the transaction be by parol, and the legal title was not conveyed, he would be held in equity as a trustee of the title for the subscribers, or those participating in the erection of the building— and they in turn are regarded as trustees of the charity.   Equity supports the estate for them, and will control it for the use of the beneficiaries.

But there is a single feature—the want of defined boundaries at the time of dedication—which it is argued distinguishes this case from Martin *v.* McCord, and other decided cases.   If it were a private purchase and therefore within the Statute of Frauds, this would be a conclusive fact; for uncertainty in the subject of the sale, unquestionably disables a chancellor from administering

the equity which otherwise the circumstances would disclose. Chancery will not exercise its high powers for individual relief, when the parties might by some slight diligence make certain the subject of their bargains; nor perhaps in matters of graver import, *quasi* public in their nature, when the uncertainty is so great that the risk of doing injustice is proportionably increased. But the higher motive of a public interest, conjoined to reasonable certainty at the time of acting, invokes more strongly the powers of a chancellor. In this case the subject-matter was reasonably defined at the time of suit. The land built upon is to that extent clearly ascertained, while the surrounding ground customarily used with it but not at first precisely defined, became so when McLain built his fences on the north and east, Dougherty's fence bounding on the south, and the public road on the west. This left a defined space between four and five rods square embracing and used with the school-house. The extent of the dedication is therefore reasonably certain, while the charity itself invokes the interposition of equity to prevent its failure.

In Pennsylvania, equity, disregarding the uncertainty of the object of a charity, will not suffer it to fail, when it can be made certain through a discretionary power vested in those who are to exercise the application of the grantor's bounty: Beaver *v.* Filson, 8 Barr 335. This doctrine was recognised in Whitman *v.* Lex, 17 S. & R. 88; and was followed by McGuire *v.* Aaron, 1 Penn. Rep. 49; Pickering *v.* Shotwell, 10 Barr 23; and other cases. This subject was elaborately discussed by Baldwin, J., in Magill *v.* Brown, Bright. Rep. 346 note. Though the rule as to the objects cannot be applied to the subject, yet the same principle which will support a charity wholly uncertain in the specific object, when a reasonable means of ascertaining it can be found in those who are to dispense it, should incline us to support it when the subject has been rendered reasonably certain by the donor himself. The extent to which equity will reach in the support of a charity may be seen in some of the examples. Thus it has sustained a devise to a Catholic priest that should succeed to the devisor and his successors; for this purpose treating it as vesting in the congregation: McGuire *v.* Aaron; the bequest of a fund to be applied under the direction of the monthly meeting of Friends of Philadelphia for the northern district, for the distribution of good books among poor people in the back part of Pennsylvania: Pickering *v.* Shotwell; a parol gift to the subscribers and also to the contributors who build a school-house for the use of the neighbourhood: Martin *v.* McCord; School Directors *v.* Dunkleberg; a parol gift to the inhabitants of a town and its neighbourhood for the erection of a house of worship: Beaver *v.* Filson. The doctrine that charities are to be supported when they reasonably can be, involves a principle which covers this case. There is nothing

[McLain *v.* School Directors of White Township.]

unreasonable, or in conflict with sound policy, in holding that the ground built upon and enjoyed under the donor's eyes for the specific charity according to his intention, and fenced off by his own act, is sufficiently certain to support the use; although the boundaries were not run off and marked at the first dedication. *Id certum est quod certum reddi potest.* The reasons in support of this are founded in good morals and sound policy. The purpose of the donor is unselfish, flowing from the best impulses of the heart, and not from a sordid desire for gain. It has its root in the second branch of that great law of charity or love, which the Saviour announced as comprehending the whole ground of human duty. The publicity of the act tends to prevent injury, for its knowledge is coextensive with the community benefited, rendering it wholly unlikely any one could innocently purchase without notice of the trust. Unlike a bargain between individuals, who deal with each other at arms' length, such a dedication involves a trustful dependence in the good faith of the donor; and the expenditure of money in the building for the use of the charity under his eyes, breeds the same confidence in his sincerity which lies at the bottom of equitable estoppel. Why should he be permitted to resume his ground with the building upon it? Equity will now estop and hold him as a trustee of the legal title for the benefit of the charity he assisted to establish. His attempt to withhold carries with it something more than a mere breach of contract, and involves the violation of a solemn pledge of plighted faith.

The judgment is affirmed.