## Martin *against* M'Cord.

A parol agreement of an individual with a number of his neighbours, that he would contribute a lot of ground in consideration that they would erect a schoolhouse upon it for their common benefit, when accompanied by proof of the execution of the agreement, is not affected by the statute of frauds; but passes a good title to the persons subscribing and building the house. They are trustees for the benefit of the neighbourhood. and, like all other trustees for charitable uses, would be subject to the supervision and control of the courts.

Upon the trial of an issue affecting a trust estate, a *cestui que trust,* by a release of his interest, becomes a competent witness: so also, if, for any other reason, he ceases to be a *cestui que trust.*

ERROR to the common pleas of *Alleghany* county.

John Martin,. the plaintiff below and plaintiff in error, brought this action of trespass *quare clausum fregit* against Archibald M'Cord and John Crawford, for breaking and entering a school house, to which the defendants pleaded not guilty and *liberum tenementum,* and the question is, as to the title. The *locus in quo* is a lot of about half an acre, with a schoolhouse thereon, which was formerly part of a larger tract belonging to Taverner Ross. In the beginning of the year 1830, Ross proposed to Crawford and another of his neighbours, to give this ground for a schoolhouse, if the neighbours would go on and build a decent house on it for the benefit of the neighbourhood and for the benefit of his grandson John, whom he wished to send to school. The neighbours to the number of eleven or more, agreed, and a subscription paper was drawn up, by which they bound themselves to build the house. Ross declined giving any money for the purpose, but said he would give the ground for his share. A surveyor was procured, who ran off the half acre on the centre of the tract by the direction of Ross, who pointed out the ground, and ordered the survey, and said, there is the ground, go on and build your schoolhouse. He afterwards said he would make a deed. The schoolhouse was built and fitted up, and occupied as such; but Ross subsequently refused to make a deed, giving as a reason, that his eyes were opened, &c., as stated in the evidence of Jacob Ross. The subscribers elected some of their number trustees, and shortly prior to the alleged trespass, the defendants were chosen trustees. John Ross, Jun., was residuary devisee of the tract, under the will of T. Ross, subject to the widow's life estate, and on the 10th November, 1835, the widow being dead, conveyed to the plaintiff the lot in controversy.

Upon the trial of the cause, James Jack was offered as a witness, by the defendant. He had lived in the neighbourhood, but had removed from it. The plaintiff objected to the witness, on the ground of interest; but the court overruled the objection, and sealed a bill of

exceptions. Several other neighbours, who had previously released their interests, were offered as witnesses; and objected to by the plaintiff, and the court overruled the objection.

The plaintiff requested the court to charge the jury that the alleged trust was vague, uncertain, and therefore void, but the court, (Dallas, President,) was of a different opinion; and instructed the jury, that the plaintiff was not entitled to recover. The court was also of opinion that the case was not within the statute of frauds and perjuries.

Metcalf and *Lowrie*, for plaintiff in error, contended that the gift was void for want of certainty as to the *cestui que trust*, and cited 8 *Johns.* 385; 9 *Johns.* 73; 4 *Con. Reps.* 372; 1 *Watts* 218.

*Forward*, contra, cited the act about Religious Societies, and Witman *v.* Lex, 17 *Serg. & Rawle* 93.

The opinion of the Court was delivered by

SERGEANT, J.—This case has been argued in the court below and here, by the plaintiff as if it involved the question how far a parol gift of land was valid under our act of assembly against frauds and perjuries. And were that the question, it was settled in Syler *v.* Eckart, 1 *Binn.* 378; that a parol gift of land, accompanied with delivery of possession, and followed by the making of valuable improvements by the donee, passes a valid title. But the truth is, this is not the case of a gift. Taverner Ross, the owner of this small piece of ground, agreed with certain of his neighbours, that if they would raise funds to build a schoolhouse on the premises, for the use of the neighbourhood and one of his grandchildren, he would contribute the ground: and they did raise the funds and build the house: bestowing, by their money and labour, considerably more than the value of the lot. They became thereby purchasers of the ground; and it is the case, not of a gift, but of a purchase for valuable consideration, accompanied with possession and the making of valuable improvements under the eye of the former owner, and by his assent and direction. Such a case is clearly unaffected by the statute, and passes a good title to the persons subscribing and building the house. If it were otherwise, it would enable those claiming under the donor to commit a fraud, and regain the property with the improvements made by others under his agreement. The title became vested in the subscribers and contributors by the agreement and payment of their money: they hold it, not for themselves, but as trustees, for the purposes originally designated. The donor had no interest in it but the share which became his by the gift of the land, and that passed only a right coequal with the others in the management of the property. This was all that could pass by his residuary devise, and gives the plaintiff no right to take possession and oust the trustees. He has no more right to do so than any third person.

[Martin v. M'Cord.]

The schoolhouse and lot of ground belong to those who contributed their money, property, or labour to build it. They, with T. Ross, embarked jointly in this benevolent project, and they have a right to hold and possess, and employ the schoolhouse. They are bound, however, to employ it for the purposes originally contemplated in its erection: and for any perversion of the trust would be liable, as other trustees for charitable uses, to the supervision and control of the courts. It does not appear, that any complaint of this kind was ever made; on the contrary, certain persons were annually elected, called trustees, who devoted their time and attention to it, employed a female teacher, and conducted the school until the plaintiff thought fit to disturb it by taking possession.

It is said that this trust is vague and uncertain: that it cannot be ascertained who are the neighbourhood. If the trust were so vague and uncertain as to be incapable of being enforced, it would not follow that the plaintiff would be entitled to the property: it would remain still with those who had paid their money for it; the plaintiff's right being no more than the share which was equivalent to the value of the ground when given. But it is not true that the trust is so vague as to be incapable of execution. It is the neighbourhood that are to enjoy the benefits of the school; and the extent of the charity must be governed by circumstances. The subscribers were neighbours, and they, at least, would be entitled to the benefit of it; and afterwards such others as, in the exercise of a just discretion by those who had its management, could be conveniently received and educated there. The rule on this subject is stated by Chief Justice Gibson in delivering the opinion of the court in Witman v. Lex, 17 *Serg. & Rawle* 93; " That it is immaterial how uncertain the objects may be, provided there is a discretionary power vested any where over the application of the testator's bounty to those objects." This discretion is in the present case vested in the subscribers or their representatives, or those to whom they delegate the management of the trust.

Charity schools have been favourites in Pennsylvania. They were introduced shortly after the arrival of William Penn in the parts of the state first settled, and have since been common. No question, till of late years, was ever made of the legal validity of such trusts; and the integrity and benevolence of their founders and managers have, with but few exceptions, rendered any aid from the laws unnecessary. When, however, such establishments were questioned, as in Witman v. Lex, they were supported under a common law of our own, which had grown up by general consent and usage, by which, without the direct force of the statute of 43 Eliz., all its beneficent provisions were recognised, so far as they applied to the charitable institutions subsisting among us.

We are, therefore, of opinion that the plea of *liberum tenementum* was not supported, and that the errors assigned in the charge

[Martin v. M'Cord.]

of the court, and in the admission of the plaintiff's evidence are not sustained.

Some exceptions to the admission of witnesses were taken, which remain to be noticed. The first bill of exceptions was abandoned on the argument here. The second, fourth and sixth bills relate to admission of certain witnesses on the part of the plaintiff who were or had been neighbours, but had released all their interest or removed from the neighbourhood. Whatever interest these witnesses had, whether so defined and certain as to prevent their admission, or so remote and contingent as not to be a valid ground of objection, was removed before they were sworn. Jack had left the neighbourhood and ceased to have any right to participate in the benefits of the school. Dodd, Denny, and Barr divested themselves of all such interest by their releases. Lewis Ross did the same. He was one who helped to erect the building: he had an interest in it beyond the mere right of a neighbour; but he might transfer that interest and release the right. We think these witnesses were properly admitted.

The matter offered as contained in the sixth bill of exceptions was properly rejected as irrelevant. It could be of no importance to the validity of this institution, or to the rights of the parties, whether the township had been districted under the school law of Pennsylvania, or whether the schoolhouse in question was near the centre of the district. The act of assembly, in providing for public schools in various districts of the state, does not supercede or abolish charity schools. There is room enough for all. We are yet far from having reached such a point in education, as to be inclined to complain that there are too many schools in the state.

Judgment affirmed.