## McKissick *versus* Pickle.

1. An individual granted and conveyed for a nominal consideration, a lot of ground to certain persons in trust for those who had subscribed or may thereafter be subscribers towards the erection of a school-house and house of public worship thereon, and towards the support of a school, or the support of the gospel, in the said building, and providing, that if at any time thereafter, the premises should be converted to any other use than as aforesaid, and for a burying-ground, that in such case the lot shall revert to the grantor and his heirs *and assigns.* It was *held,* that the mere permission by one of the trustees to a female in distress, to occupy the premises temporarily, as a tenant at will, without rent, though she and her family remained in it for years, did not work a forfeiture of the estate to the grantor or his assigns.

2. The declaration or admission of one of the trustees of a charitable trust in real estate, that the trust title had been divested, cannot affect the right of the persons interested under the trust. The trustees have no right to relinquish the trust property.

3. Though in the case of a condition *in law,* none but the grantor or his heirs can enter for a condition broken, yet in Pennsylvania, where the doctrine of maintenance does not prevail, there is no policy of law which forbids the reservation of a right of entry *to the assigns* of the grantor. Therefore, in the case of such a reservation, a purchaser of the grantor's conditional interest in the premises, at a sheriff's sale, is within the terms of such a reservation, and if a forfeiture exist, he may take advantage of it, though his purchase was *before* the condition was broken.

ERROR to the Common Pleas of *Lancaster county.*

This was an action of ejectment by Arthur McKissick *vs.* Leonard Pickle, for a lot of ground. Summons issued March 22, 1850.

On the 25th of October 1819, Samuel Ferguson and wife conveyed by deed a lot of ground in Georgetown to Arthur McKissick and Robert Patterson, in trust, and as trustees "for all those person or persons who has or may hereafter be subscribers towards the paying the expense of erecting a school-house and meeting-house (or house of public worship) and keeping the same in repair, (on the following described lot of ground,) and all those persons that has or may hereafter subscribe for the payment of money towards the support of a school, or the support of the gospel, or both of them, in the said school-house or meeting-house, of the second part."

Witnesseth, that the said party of the first part, for and in con-

sideration of the sum of $100, " doth grant, bargain, and sell unto the said party of the second part, all that lot of ground situate in Bart township aforesaid, and in the town of Georgetown, known in general draught of said town, filed in register's office of said county on the 13th day of March, 1813, by No. 81, and bounded as follows, viz. beginning," &c.

" Together with all and singular the houses and outbuildings thereto belonging," &c.

" To have and to hold the said lot of ground, hereditaments and premises, with the appurtenances, unto the party of the second part, to the only proper use and behoof of the said party of the second part, and to their heirs and assigns for ever."

" Provided always nevertheless, that if at any time hereafter the above-described property, or any part of it, should be converted into any other use than for the use of a school-house for the education of youths, and a meeting-house for promulgating the gospel, and also a burying-ground, and such other improvements as may be advantageous and of use to the promotion of the aforesaid three objects, that then and in that case, the said lot shall revert to the party of the first part and to his heirs and assigns."

This deed was recorded in book No. 22, p. 232, on the 15th day of April, 1822.

A school-house was built by subscription on said lot immediately after, school kept therein, and preaching on Sunday and other days.   School continued there until 1839, and preaching until 1842.   It was the main school in the township, and larger than any school-house in the same.   In 1841, Susanna McCaffery, with four small children, and her sick husband, who died in a month after, were permitted by Arthur McKissick to occupy said school-house, on account of her poverty and destitution.   No part of the house was altered or changed.   She used the school-house stove for all purposes, and some bed-clothes were nailed to the ceiling to conceal the bed; some benches were put out.   She paid no rent, and remained there seven years (April 1848) when she went out; defendant took possession, and shortly after tore down the school-house and farmed the whole lot.

Jacob Eshleman obtained judgment to August 1823, No. 251, against Samuel Ferguson and John Bachman for $400, real debt. A sci. fa. was issued on this judgment to December 1828, No. 38, and on December 23, 1829, judgment was entered for plaintiff; a fi. fa. on same to August 1830, No. 29, and a levy under same of all the right, title and interest of Samuel Ferguson *in all the lots, streets and alleys in Georgetown, enlarged,* &c., and on *vend. exp.* to April 1831, No. 19, real property sold for $85.   June 13, 1831, sheriff's deed to Jacob Eshleman for consideration $85, acknowledged.

1845, August 20, Jacob to B. B. Eshleman, deed for same.

1847, April 22, B. B. Eshleman to Leonard Pickle, deed for same.

Robert Patterson, one of the trustees, died before suit brought, and title was admitted to have been in Samuel Ferguson, on 25th of October 1819.

The main question was whether the title vested in the trustees by Ferguson's deed in 1819 has been divested; and whether the defendant had title to the premises. On the trial, on the part of the defendant it was offered to prove that the condition in the deed of 1819 was broken since the sheriff's sale, and that Jacob Eshleman, the sheriff's vendee, entered, and that Benjamin B. Eshleman and defendant came into possession under sheriff's vendee.

Plaintiff objected to the evidence:—1. Because the lien of the judgment commenced after plaintiff's right accrued, and was recorded without notice to him. 2. Because the levy is upon all the lots together, without describing this lot or levying upon the reversionary interest, if any, of Ferguson. 3. A stranger cannot enter for condition broken : 55 *Law Library; Crabb on Real Prop.* 555. If condition in deed be broken, none shall take advantage but feoffer or his heirs, and right of entry given to a stranger is void. Distinction between condition in *deed* and in *law.*

Court overruled the objections and admitted the evidence, and exception on part of defendant.

Amos Pickle testified:—I am defendant's brother; no school has been taught in the house in question since 1839; it was not used for a meeting-house until the Mormons used it in 1839; I went to McKissick in 1839 for the key, and he gave it to me. I asked if he had any objections to preaching in the house, and he said not; the house did not belong to him, it belonged to Jacob Eshleman. He knew it was a Mormon that was going to preach there and had preached there. He said he had nothing to do with it, it belonged to Jacob Eshleman. He never asked me for the key again; I cannot tell that he ever got it. In 1841, a man named Edward McCaffrey moved in, and he died there, and his widow remained there for seven years after 1841. It was never used as a burying-ground; the land has been occupied as farm-land for potatoes, corn, and oats, by my brother, since 1847; the house he pulled down, the last of it in 1849; the other part in the same year or the year before.

Cross-examined:—*Before my brother had purchased, he knew what McKissick had told me about it ; I told him some time after McKissick had told me;* the conversation with McKissick was in 1838 or 1839; John Alt was present. There was no school kept in it at that time; the last school kept there was in 1839; I don't know who built the school-house; I unlocked the house with the key, and left it in the lock. The widow was there from the spring of 1841 to the spring of 1848; she was gone when my brother commenced tearing the house down ; no change was made in the

building; she just occupied the school-house, and lived there without any change in the building. I know of no preaching before or after the Mormons preached there. After Mrs. McCaffrey moved there, there was preaching there; in spring of 1841, but not after.

On the part of the plaintiff, General James Caldwell testified: This school-house was built immediately after getting the deed; Samuel Ferguson spoke to me to prepare a deed; I prepared one; I heard the deed read. I lived a very short distance of it for twenty years; it was the main school in the township; it was a larger school-house than any in the township; school was kept there until, 1838 when it closed. Heard of worship in it frequently; I heard Mr. Barr, Presbyterian, and Peter Miller, and I heard the Mormons frequently. After the school was quit, no use was made of it till Mrs. McCaffrey went in; in the latter end of March 1841 or 1842, Mrs. McCaffrey came to my house and stated they had been in a distressed way all winter, that her husband came home sick in the fall, and asked me if she could go into the school-house. I sent her to plaintiff; she told me again that she had went to Arthur McKissick and he had given her leave in consequence of her distressed situation; she went in. They hung up some bed-clothes to make a partition around the bed. She went in in April. Her husband died the last of April; she had three or four children, all young; she remained there some years; she went out into a house of Leonard Pickle's brother after she had been there seven years. The next morning I heard that the building, except the walls, was pulled down; all the wood-work taken out; I saw defendant pulling the walls down; he hauled the stone home to build a barn; very little repair would have made it a good school-house. I heard plaintiff three times tell Pickle he would bring suit if that school-house business was not settled; that was after it was pulled down.

Isaac Riley, sworn:—In 1841—latter part of March—Mrs. McCaffrey moved into this house; in about a month after her husband died; she lived there seven years; during the time she lived there, there was preaching several times in 1841 and 1842; I can't tell whether there was any since.

Admitted that plaintiff put Mrs. McCaffrey in possession.

LEWIS, President, after stating the evidence, instructed the jury substantially as follows :—

1. That the evidence of *non user* is not sufficient to work a forfeiture of the estate.

2. That the defendant was not, under the circumstances of this case, bound to make any other demand, previous to taking possession, than that disclosed in the evidence.

3. That if the jury believe the lot in question is included within the description of the " lots, streets, and alleys of Georgetown en-

larged" levied on and sold, the sheriff's sale passed the interest of Samuel Ferguson, notwithstanding that there was no specific description of the lot, or of the reversionary interest of the said Ferguson.

4. That the sheriff's sale is sufficient to pass the title of said Ferguson, notwithstanding that the judgment of 1823, and its revival in 1829, were both entered without notice to Arthur McKissick or Patterson, the trustees.

5. That, for the present, and until the question be further considered, the jury are instructed that notwithstanding the sale by the sheriff took place before any forfeiture had accrued, the sheriff's vendee and those claiming under him, had, under the provisions of the deed of 1819, a right to enter for the breach of the condition as fully as the grantor or his heirs might have entered.

6. That the original owner, Ferguson, had a right to give the property for the uses designated in the deed of 1819, and the trustee had no right to divert the property from the uses thus designated. The trustee had no right to devote trust property to such purposes, contrary to the nature of the trust.

That if the jury believe that the plaintiff, in the spring of 1841, consented that Mrs. McCaffrey should remove into the house with her husband and her family, and occupy the premises as a dwelling-house, without any limitation as to time, and that, with the acquiescence of the plaintiff, and all others interested in the trust, she continued thus to occupy the property as a dwelling-house for seven years—and that during that time no school was taught in the house, and no worship except the occasional preaching stated in the evidence, while the family so occupied the premises, and that the property never had been used as a burying-ground, the defendant is entitled to retain his possession against the present plaintiff. If the jury believe the facts here stated, the plaintiff cannot recover.

The plaintiff excepted to the charge of the court before verdict. November 26, 1850, verdict for defendant.

It was assigned for error:

1. In charging the jury on all the points but the first in favor of defendant, and particularly in that part relating to the use of the property by Mrs. McCaffrey working a forfeiture.

2. In ruling that the defendant could enter, if the condition of the grant was broken by the title he acquired under the sheriff's sale.

3. In admitting the evidence referred to in the offer on part of defendant, and contained in bill of exceptions.

*Frazer*, for plaintiff in error, who was plaintiff below.—As to

[McKissick v. Pickle.]

first exception. The occupancy by a destitute woman, without changing the building in any way, the possession being at will, did not work a forfeiture.

The grant was a charity, and could not be forfeited for *non user* or *misuser;* and even if it could be, under an express condition or contract, it must be clearly, expressly, and strictly shown *that the condition was broken.*

No act or permission of McKissick could work a forfeiture of the interest of *cestui que trusts,* nor would a mere acquiescence on their part produce that result: 5 *Watts* 493, Martin *v.* McCord; 9 *Barr* 433, Wright *v.* Linn.

The subscribers to this school-house were not alone beneficially interested: the children around were the beneficiaries. Could such a benevolent purpose and gift be forfeited by the occupation of the building as detailed in the evidence?

The real interest of a minor or beneficiary in land cannot be divested by the act of the guardian or trustee.

The law raises every intendment in favor of a charity against the grantor or those claiming under him.

Public schools are favorites of the law in Pennsylvania.

2. The court erred in ruling that the defendant could enter if the condition of the grant was broken by the title he acquired under the sheriff's sale.

It is well settled that none but the grantor or his heirs can enter for condition broken—no assignee or stranger can do so: See 55 *Law Lib. Crabb on Real Prop.* 531, 550, sec. 2150, 2189, 2190, and the authorities there cited; also, 5 *Watts* 493, Martin *v.* McCord; 9 *Barr,* Wright *v.* Linn, 433; 1 *Jones* 444, Klinkener *v.* School Directors, &c.; 3 *Caines* 345, Newkirk *v.* Newkirk; 5 *Ser. & R.* 385, Hamilton *v.* Elliott, where GIBSON, Chief Justice, says, *"none but the feoffer or his heir can enter; and the reason why a right of entry cannot be assigned is, that a contrary doctrine would favor maintenance and promote litigation:"* 1 *Inst.* 216; 1 *Wend.* 395, Jackson *v.* Topping; 9 *Mass.* 500, Wardens of King's Chapel *v.* Pelham.

No demand or notice of entry was given by Pickle to McKissick.

*Stevens,* for defendant.—The plaintiff claims the lot in question by virtue of a deed in trust to hold it for a school-house. In the deed there is an express condition that if it should cease to be used as a school-house, or be used for any other purpose, it should revert to the grantor, *his heirs or assigns.* The plaintiff contends that the title cannot be forfeited by *non user* or *misuser,* and relies on the case of Wright *v.* Linn, 9 *Barr* 433; and Klinkener *v.* School Directors, 1 *Jones* 444.

There are two kinds of conditions; one in fact, which is by express words; and one in law, where the forfeiture is not *expressly*

provided for, but is implied by law, arising from the nature of the condition.

The condition in the cases relied on by plaintiff are conditions in law, which have no bearing on this case.

The condition in this deed is a condition in fact, expressly stipulating the terms on which the title was to revest in the grantor, his heirs or assigns. The courts in Pennsylvania have never undertaken to declare such condition inoperative. Indeed they could not without violating the contract.

The condition in this case was proved to have been violated; and the plaintiff had surrendered the possession to the sheriff's vendee, as proved by the evidence of Amos Pickle and another.

The only real question here is, had the grantor such an interest in land after the grant to the trustees as could be levied on and sold by the sheriff; and could the purchaser at sheriff's sale take advantage of the condition broken? In Pennsylvania, all possible rights and titles—contingent or otherwise—in lands where there is real interest, may be taken in execution—every *scintilla* of interest may be thus sold: 1 *Yeates* 427; *id.* 27. Even if the land be in the possession of another claiming by a paramount title: 3 *W. & Ser.* 114, Janett *v.* Tomlinson.

In England, while real estate could be conveyed only by feoffment, it was held that a condition was not assignable, and could be taken advantage of only by the feoffor or his heir, as he could not enter until the condition was broken, and consequently could not convey the title to land of which he was not in possession. Nor could the same be devised. But since the mode of conveying real estate by deed of bargain and sale, and the passage of the statutes of *trusts* and of *uses* converting such deeds into perfect titles, a condition is devisable even in England: *Equ. Abr.* 106–107; Marks *v.* Marks, 1 *Strange* 129; 2 *Bac. Abr.* 318–319, tit. *Condition,* (edition of 1843,) in note. The reason why a condition was not assignable in England, was because *no title* could be made to land held by another adversely, as that was against the law which forbid maintenance. No other reason was ever attempted to be given for it. But in Pennsylvania, the law against maintenance never has been adopted: *Kent's Com.* 448. While in England it would have been mischievous to allow great men to uphold their dependants in lawsuits, yet in Pennsylvania there are (in theory) no great men and no dependants; and therefore maintenance is not forbidden. Besides, our titles have always been by deed, and not by livery and seisin. Every reason against the sale of a conditional interest is wanting in Pennsylvania.

In Lampit's case, 10 *Coke* 48, it is said, "that although a possibility or condition cannot be granted to a stranger, because it would tend to multiply contentions to the great oppression of the people, yet all rights and titles, whether in *præsenti* or *futuro,* may

be released or assigned—1. To the tenant of the freehold in fact or in law without any privity. 2. To him in remainder. 3. To him in reversion without privity. 4. To him who has right only in respect of privity without any estate. 5. In respect of privity and without right."

In Pennsylvania a sheriff's vendee is not a stranger, but may take, even if the condition be to the grantor alone. But here there are express words, *heirs* and *assigns.*

It was once held that on condition broken, it was necessary to have an actual entry to support ejectment. That has long ceased to be the law: 1 *Salk.* 250; 2 *Ld. Raym.* 750; 3 *Burr.* 1897; 1 *Johns. Cases* 125, Jackson *v.* Crysler. Here the question can hardly arise, as defendant is in possession: 5 *Ser. & R.* 375; 5 *Mass.* 34.

In 5 *Pick.* 528, Hayden *v.* Stanton; 10 *Pick.* 306, Brigham *v.* Shattuck, and 462, Clapp *v.* Staughton, the question of the devisability of a condition, or interest in real estate depending upon forfeiture for condition broken, is fully considered. The court held that such interest or possibility was transferable by devise, and that the residuary legatee took to the exclusion of the heir at law.

In the first of these cases land had been devised to a town for a school-lot. The town took possession, but for twenty years neglected to build the school-house. The residuary legatee recovered it. The court say, "there was a contingent interest, which the devisor might have disposed of, if he pleased, to take effect on the forfeiture of the estate."

In the last case, it was decided that such interest vested in the residuary legatee *and descended to his heir, although the residuary legatee died before the condition broken.*

In Marks *v.* Marks, 1 *Strange* 129, it was held that "though a condition, in strictness of law, is not devisable, yet since the statute of uses the devisee may take advantage by an equitable construction."

"The possibility of performing a condition was an interest or right, or *scintilla juris* which vested it in B. and consequently descended, et cetera:" 2 *Bac. Abr.* 320, *Cond.* (P.)

The conclusion of these authorities is, that the right to take an estate in lands on the breach of a subsequent condition is an interest in real estate descendable to the heir, and now even in England, and always in this country, devisable and transferable to a stranger, who could enter even when the right was reserved to the grantor personally.

But this investigation was hardly necessary for the case in hand, because such right or interest is *expressly* granted to the "assigns," and there is no policy of law in Pennsylvania which prohibits such contract. It also appears that defendant is in possession by the

consent of plaintiff, who admitted, that "it had fallen to Jacob Eshelman, and that he had nothing more to do with it."

But even if the grantor had consented that he would not sell such contingent right, still the law might have sold it for the bene-fit of creditors. "A covenant not to assign without license" applies only to voluntary sales; but the creditors may seize and sell: 4 *Kent. Com.* 123, (4th edit.)

The opinion of the court was delivered May 21, by

ROGERS, J.—As this presents the case of a condition in fact, and not a condition in law, it must be conceded that the property conveyed to the trustees, though for a charitable use, may be forfeited by *misuser.* The condition is, that if at any time hereafter the above described property, or any part of it, should be converted unto any other use than for the use of a school-house for the education of youths, and a meeting-house for promulgating the gospel, and also a burying-ground, and such other improvements as may be advantageous and of use to the promotion of the aforesaid three objects, that then, and in that case, the said lot shall revert to the party of the first part, and to his *heirs and assigns.* The proviso in the deed is entitled to a fair, liberal, and benign interpretation, not according to its letter, but its spirit. Viewing it in this aspect, I cannot bring myself to believe that it was in the contemplation of the parties (the grantor and those who contributed the funds to the erection of the building) that an occasional use of the property by a tenant at will, for purposes other than those mentioned in the deed, would work a forfeiture of the estate. To produce that effect, it must be by some permanent use different from those enumerated in the deed, such for example, as converting the building into a factory, or the land attached to it into arable land or pasture. The grant, being for a charity, could not be forfeited for *non user,* nor for *misuser* except under an express condition or contract; and although, in the latter case it may, yet it must be clearly, expressly, and strictly shown that the condition was broken: 5 *Watts* 493, Martin *v.* McCord; 9 *Barr.* 433, Wright *v.* Linn. The law raises every intendment in favor of a charity, against the grantor or those claiming under him. Public schools intended for the children in the neighborhood are favorites in this State, and must receive the protection and support, as far as is reasonable, of the public tribunals. It must be kept in view, that it is a *misuser,* and not a *non user,* which produces the forfeiture. So runs the deed. Throwing therefore, the *non user* out of consideration, what is the evidence of *misuser?* It consists simply in this, that one of the trustees, from motives of humanity, there being no school kept in the building at the time, nor afterwards, allowed a destitute woman, as a shelter for her sick husband and helpless children, to occupy the building as

[McKissick *v*. Pickle.]

a tenant at will, without rent, and without charging the building in any way. General Caldwell in substance states, that after they had ceased to keep school in the building, no use was made of it till Mrs. McCaffrey went in. In the latter end of March 1841–42, Mrs. McCaffrey came to his house and stated that they had been in a distressed way all winter, that her husband came home sick in the fall, and asked him if she could go into the school-house. He sent her to plaintiff. That she afterwards told him that she had gone to Arthur McKissick, and that in consideration of her distressed situation, he had given her permission to occupy the premises—she took possession in April—her husband died the last of that month—she had four children, all young, and that she remained there some years. The only alteration that was made was, that some of the benches were put out. The school-house was used by Mrs. McCaffrey, as she testifies; she also proves she paid no rent, and that there was nothing said about the length of time she was to occupy the building.

We think the defendant has failed to prove such a permanent use or occupation of the building, within the meaning of the deed, as to work a forfeiture; and so the court ought to have instructed the jury. The evidence shows, that although they had ceased to use it for a school, yet there was occasional religious worship in the building, one of the objects mentioned in the deed, by permission of the trustees, thereby exercising such control of it as to be inconsistent with the idea that Mrs. McCaffrey had any interest except at their will and pleasure. That the occupation continued for seven years makes no difference; for as it was in the commencement a possession at the will of the trustees, so it continued during the whole period to be held at their pleasure. It was temporary in its nature, and not a *permanent* use of the building, which alone can work a forfeiture. The declaration of one of the trustees, that the property had fallen to Jacob Eshleman, and that he had nothing more to do with it, cannot affect the right of the corporation, who alone are the persons really interested in the property. The trustees have no right to relinquish property belonging to others.

On this point we think the judgment must be reversed. But as the cause goes down for another trial, it becomes necessary to notice another point, and that is, can the sheriff's vendee enter for the condition broken. The deed provides that the property shall revert to the party of the first part, and to his heirs and assigns. The sheriff's vendee is not an heir, yet is he not legal assignee by operation of law, within the true intent and meaning of the deed, which reserves the right of entry, not only to the heirs, but his assigns. That a grantor cannot reserve such a right, will hardly be contended, as in Pennsylvania there is no policy of law which forbids it. The law against maintenance has never been

[McKissick *v.* Pickle.]

adopted in this State. The reason assigned why a condition in England could not be assigned, is, because no title could be made to land held by another adversely, as that was against the law, which forbid maintenance. And hence the rule, that none but the grantor, or his heirs, can enter for condition broken. This reason does not apply here, where the grantor expressly reserves the right : 55 *Law Library, Crabbe on Real Property* 531, 550, sections 2150, 2189, 2190, and the authorities there cited ; 5 *Watts* 493, Martin *v.* McCord ; 9 *Barr* 433, Wright *v.* Linn ; 1 *Jones* 444, Klinkener *v.* School Directors, &c. ; 3 *Caine* 345, Newkirk *v.* Newkirk ; 5 *Ser. & R.* 385, Hamilton *v.* Elliott. In the last case, Chief Justice GIBSON says, none but the feoffor or his heirs can enter ; · and the reason why a right of entry cannot be assigned is, that a contrary doctrine would favor maintenance and promote litigation. This is a fair case for the application of the maxim, *cessante ratione cessat ipse lex.*

But a doubt has been suggested whether the grantor had such an interest in the land, the condition not being broken at the time, as would be the subject of levy and sale by the sheriff. This point we think is expressly ruled in *Hayden v.* Stanton, 5 *Pick.* 528. That was an estate, as here, devised for the use of a school-house, on a condition subsequent. This was held to be a devise of a conditional, and not an absolute fee ; that an interest still remained in the devisor, and his heirs. The court say, it is clear the whole interest is not disposed of to the beneficiaries. If then, an interest in the land remain in the grantor, notwithstanding the grant, it may be sold by the sheriff, for in this State all possible contingent titles in land accompanied with a real interest, may be seized in execution and sold by the sheriff: Humphrey's Lessee *v.* Humphries, 2 *Dal.* 223 ; 1 *Yates* 427 ; Rickert *v.* Madeira, 1 *Rawle* 432. The sheriff in these cases levied on all the right, title, and interest of Samuel Ferguson, the grantor, in all the lots, streets and alleys in Georgetown, &c. The interest of Ferguson therefore, whatever it was, passed to the sheriff's vendee, and as such, his vendee had a right of entry by the express terms of the deed. In a condition at law, it is true that none but the grantor and his heirs can enter for a condition broken. No assignee or stranger can do so. But I know of no rule of policy in this State, where the ancient doctrine of maintenance does not prevail, which prohibits a grantor or devisor from directing otherwise.

Judgment reversed and a *venire de novo* awarded.