## Lockwood's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, and Ladner, JJ.

*Martin H. Yusem* and *Sidney Schulman*, for Lily Dale Assembly.

*Ralph B. Umsted* and *Leonard Michael Propper*, Special Deputy Attorneys General, for Commonwealth.

STEARNE, J., June 13, 1941.—Testator, a spiritualist, bequeathed his residuary estate to the "Spiritualistic College to Educate Mediums, at Lillydale, New York." The residuary estate, according to the account, amounts to $4,568.63.

The Lily Dale Assembly, a New York corporation, claimed the bequest as an absolute gift to it. The Commonwealth maintained that the testamentary provisions established a trust, which, however, was invalid because against public policy, and, as no next of kin apparently existed, that the fund was payable to the State Treasury, without escheat.

622

The auditing judge ruled that there was no absolute gift to the Lily Dale Assembly; that a trust was contemplated and erected by testator; that the purpose of testator was to establish "a spiritualistic college to educate mediums to be established at Lily Dale, New York." The award was as follows:

"I will award the fund to a spiritualist college to be established for the purpose of educating mediums of the kind and type whose conduct and practices are above reproach, more specifically such as will not seek to demonstrate their power by physical means such as slate-writing, trumpet-speaking, bell-ringing, tambourine, spirit rappings, phantom appearances, blindfold demonstrations, etc. Pending the proper application for such award, the balance shown by the account, after payment of claims, costs, etc., will be awarded back to the executor to be held for future accounting."

With his accustomed diligence and learning Judge Ladner delved deeply into the difficult and shadowy field of religious and educational trusts—particularly those relating to spiritualism. At the threshold he was met with the problem whether a belief in spiritualism is a religious belief or a philosophical doctrine. In a most scholarly and painstaking research the auditing judge demonstrated that, if this particular bequest constitutes a trust, it is a religious use; that the Constitution of the United States assures to the individual freedom of religious belief and worship; that the test of religious freedom is not *belief* of the avower, but whether the *practices* affect the security of the state or the welfare of its citizens; that the practices of certain of the mediums are not repugnant to public welfare, whereas others are fraudulent and harmful; the auditing judge therefore permitted the erection of the trust, *upon terms*, viz: When and as it was shown there was a proper trustee capable of acting, and for a lawful purpose. As the learned auditing judge has so ably considered these matters, and under principles with which we thoroughly agree, we shall

neither discuss the evidence, nor review the authorities which he cites.

However, we are first required to test and decide whether this bequest is *absolute*, or constitutes a trust. The testamentary meaning of the words "to educate mediums" is the key to the problem.

Lily Dale Assembly contends that the words "Spiritualistic College to Educate Mediums, at Lillydale, New York", are merely *descriptive* of the beneficiary, in terms of work, purpose and location. The Commonwealth, on the other hand, maintains that these words create a trust; that the true meaning is to a "Spiritualistic College at Lillydale, New York, to educate mediums."

The auditing judge points out that there is really no "college" at Lily Dale, New York; what the true nature of the group and assembly at Lily Dale consists of is perhaps difficult to define; he ruled that "Lily Dale Assembly" does not qualify as a trustee under the testamentary designation—at least as now constituted and conducted.

As we read the testimony, while the question may be debatable and close, yet we feel that irrespective of the character of the New York corporation, and the nature of its business, this was in fact the *organization* which testator had in mind when he made the bequest. The fact that testator and his mother, who were Spiritualists, visited the organization on several occasions, and were in touch with the leaders, confirms this view. Any doubt as to the *identity* of the beneficiary (whether absolutely or in trust) is dispelled by the learned counsel for the Commonwealth in his brief where he writes:

"It is now conceded by the Commonwealth that the Lily Dale Assembly of Lily Dale, New York, has met the burden of proving it was the corporation intended by the testator when he used in his Will, the phraseology 'Spiritualistic College at Lillydale, New York' ".

We are, therefore, relieved from a consideration of those cases where there is a defective designation of the

title of a charitable, religious, or educational legatee; these cases may be found in Hunter's Orphans' Court Commonplace Book, sec. 7, p. 97.

We are, therefore, relegated to the inquiry whether the use of the words "To Educate Mediums" is part of the *description* of beneficiary, or a *statement of a trust.*

A majority of the court are of opinion that the phrase in question is part of the *description,* and was *not* intended as a statement of a trust. Without reviewing the voluminous testimony, this New York corporation does, among other things, purport to teach "philosophy of spiritualism and instructions along the lines of improving mediums through education so that they are better prepared to go before the public". In describing and identifying the beneficiary, it may well be that testator contemplated the corporation as a "Spiritualistic College to Educate Mediums".

An examination of the probated original typewritten will discloses a significant use of capital letters. Wherever the names of the decedent, the beneficiaries and executor are used, capital letters are invariably employed. Thus, testator's name appears in caps; the name of testator's mother (the first taker) likewise is in caps; the executor's name appears in caps; and, of the utmost significance, the words "Spiritualistic College to Educate Mediums", also appears in caps. This silent, although eloquent *physical* indication of intention, would seem to demonstrate that the phrase thus capitalized was intended, as in all other parts of the will, to *indicate and describe* the beneficiary, rather than as as a narration of an intended use.

Of one thing we are certain: We can attribute no intent by testator to use his residuary estate *to establish a college.* This conclusion would seem to be strengthened when it is remembered that an obviously inadequate amount for such a purpose is bequeathed.

We are equally certain that no trust was created. To imply a trust requires the transposing of the questioned

phrase, or the addition of two commas. In our view the bequest is an absolute gift to a designated beneficiary, the Lily Dale Assembly.

Where the gift is to the charitable corporation, and is not impressed with a trust, the orphans' court, after payment of the award, has no further jurisdiction over the bequest: Ferguson's Estate, 9 D. & C. 223; In re Wanamaker Institute of Industries, 36 D. & C. 406, 412. And as the Lily Dale Assembly is a regularly chartered corporation under the laws of the State of New York, this court is without jurisdiction either to collaterally question the purposes enumerated in its charter, or to pass upon their validity: See 1 Savidge on Corporations (2nd ed.), chap. XXXV, and the cases therein cited; C. J. 14A 1233 et seq.

Counsel for Lily Dale Assembly suggest that, even though the gift be regarded as a trust, such trust is to be administered in New York State, by a New York corporation; that, in construing a trust, the law of the State where it is to be *administered* governs; that the philosophy of such a rule is that it is not the *giving* which may be objectionable, but the administration of the gift: Goodrich on Conflict of Laws (2nd ed.), p. 446 et seq.; 89 Univ. of Penna. L. Rev. 671 (March 1941). In a well-considered brief counsel cites many New York cases holding that a direct gift to a charitable society with words showing the purpose, nonetheless, is freed from the charitable use: In re Lister's Estate, 161 Misc. 734, 292 N. Y. Supp. 870; Matter of Hart, 205 App. Div. 703; Corp. of Chamber of Commerce of State of N. Y. v. Bennett, 143 Misc. 513. See also Rankin Regular Baptist Church v. Edwards, 204 Pa. 216, T. W. Phillips Gas & Oil Co. v. Lingenfelter, 262 Pa. 500, and Sapper et al. v. Mathers, 286 Pa. 364. But, as we have decided that the gift is absolute, any decision upon this question would be dictum, and should form no part of this opinion.

Exceptions 1, 2, and 3 of Lily Dale Assembly are sustained, the others are dismissed and those of the Com-

monwealth of Pennsylvania, and of A. E. Archer et al., are dismissed. The adjudication, as herein modified, is confirmed absolutely.

LADNER, J., dissenting.—For the reasons set forth in my adjudication which I need not now repeat, I dissent from the ruling of the majority that the Lockwood bequest was not intended to be in trust but to be an outright gift to a beneficiary mis-described as a "Spiritualistic College to Educate Mediums." In arriving at their conclusion, to my view, the majority have failed to note the distinction which our Supreme Court has consistently observed in construing bequests to private as opposed to charitable and religious trusts. In the former the intent of testator to create a trust must appear with reasonable clarity. In the latter it is presumed and the contrary must be clearly stated: White's Estate, 340 Pa. 92, 96 (1940).

In Baughman's Estate, 281 Pa. 23, it was said (p. 29) : " '. . . a gift to a charitable or religious institution, without declaring the use, . . . [is] a gift for the uses for which the institution was created, under the inference that the donor adopted or intended such use, because he knew that the institution could not devote his bounty to any other purpose.' "

For a comprehensive review of the early cases, see Lawson's Estate, 264 Pa. 77, where it was held that a bequest without any mention of a trust was not to be construed as an outright gift but as being necessarily in trust because the legatee was a charitable corporation. See also Kortright's Estate (No. 2), 237 Pa. 143, 149, where it was said of a gift absolute in form: ". . . as the appellees were created for religious and charitable purposes, and for such purposes alone, the bequests to them are for charitable and religious uses alone, and cannot be devoted to or used for any other purposes."

The rulings by the courts of other States to the contrary as, e. g., New York, are clearly and logically explained by 2 Bogert on Trusts and Trustees, sec. 324, as

being due to the desire of such courts to escape the effect of rigorous mortmain statutes prohibiting bequests in trust for charitable or religious uses. In such States, in order to prevent the gift from failing as invalid, they are customarily construed as absolute gifts, and even express words of trust have been overridden in an anxiety to support the gift. In Pennsylvania, however, the British mortmain statutes were never enforced (The Domestic and Foreign Missionary Society's Appeal, 30 Pa. 425, 434, and see Magill v. Brown, Brightly's Rep. 347), and our own legislation is so consistently liberal as to require no artifice to circumvent them. But always have we reserved the right to scrutinize the purposes of such trusts and restrict or strike down such as were against the policy and welfare of the public: Taylor v. Hoag et al., 273 Pa. 194; Knight's Estate, 159 Pa. 500; Zeisweiss v. James et al., 63 Pa. 465; Boulevard From Second Street, 230 Pa. 491; Restatement of Trusts, §§371, 377.

When therefore the Attorney General, representing the Commonwealth (which under our system of government is itself the "Visitor" of charities), apprehended that the bequest in question might be used to spawn forth "mediums" to prey upon the confiding or gullible part of the public, the auditing judge felt impelled to inquire to what extent these apprehensions were justified, though it would have been far easier to have emulated Pontius Pilate and washed his hands of the question by seizing on the suggestion that there was no charitable trust intended. Nor could this responsibility be evaded because the trust was designed to be carried out in another State, for the effect of the finished product, i. e., the "mediums" thus educated, could by no means be expected to confine their practices to that State alone.

As a result of the inquiry thus made, it clearly appeared that there were two classes of mediums: The physical manifestation mediums who, for gain, produce by trickery various physical manifestations such as written messages, knocks, raps, trumpet blowing, etc., pur-

porting to come from a "called for spirit," and by such fraud and systematic deception impose on the credulity of those whose minds have been weakened by sickness or age, or perhaps the overwhelming grief of the untimely death of a loved one. The other class of mediums are the so-called inspirational or mental type of medium. These claim the power to receive, through the mind, spirit communication. They resort to no trickery or artificial means to prove their claimed power, and whether they actually possess it or not must be taken on faith. As to them the adjudication says:

"It may be said that the extent to which mind can communicate with mind, or living mind with the minds of the past, or, as some psychologists call it, 'the universal mind', has not been fully explored. The auditing judge is unwilling to affirm that finite mind cannot communicate with infinite, or spirit minds, if they exist. All he can say is that proof of such communication has so far not yet been established."

To educate the first class of mediums, the auditing judge concluded, was against public policy, but this was not true of the second class, for the reasons more fully discussed in the adjudication. Pursuant to that conclusion, the order quoted in the majority opinion was entered.

In re Wanamaker Institute of Industries, 36 D. & C. 406, 412, cited by the majority, presents no inconsistent views to those here expressed. All that case decided was that where by the terms of a will trustees were directed to be discharged of all responsibility upon payment of a bequest to a charitable corporation of a certain type, did so, and were discharged, this court had no further jurisdiction many years thereafter to require the recipient to file an account of all of its assets upon petition of another charitable corporation, alleging that the said recipient had ceased to perform its chartered functions. We indicated, however (see page 412), that our ruling might be otherwise where such right was reserved by condition attached to the award. Here the auditing judge proposed

to attach appropriate conditions to the award ultimately to be made, which would be effective to retain the jurisdiction in this court to see that the bequest would not be used in a manner contrary to public interest.

The fact that testator and his mother attended the summer meetings of claimant, saw its printed programs, and were familiar with its various activities warrants the belief that he was also familiar with its correct corporate title. The use of the term "Spiritualistic College to Educate Mediums" would therefore presumptively indicate the particular phase of activity he wished to encourage. The ruling of the majority ignores this and its unrestricted award will permit the use of the bequest for any other of the claimant's various activities, some of which are far removed from the particular purpose which testator intended to support.

I would dismiss all exceptions.