## Duffy Estate

*Penrose Hertzler*, for accountant.

GANGLOFF, P. J., October 25, 1954.—. . . Testatrix in her will creates two trust funds of $500 each. . . .

The first is known as a cemetery trust and is a legal perpetuity authorized under clause (2) of subsection (*b*) of section 4 of the Estates Act of April 24, 1947, P. L. 100, namely:

"(2) Cemetery Trusts. Interests which are directed to be used for the maintenance, care, or adornment of any cemetery, churchyard or other place for the burial of the dead, or any portion thereof, or any grave therein or any improvement on or about the same, and which are subject to no condition precedent at the end of the period described in subsection (b)."

The other trust provided for in the will is plainly upon its face also a perpetuity. The principal of the

trust in the amount of $500 is to be held and administered by the trustee perpetually and only the income therefrom is to be expended by it and limited to "the offerings for Masses for the repose of my soul and the souls of all the members of the Daniel Duffy family." We again must look to the provisions of the Estates Act of 1947, supra, to find an answer to the question, Is this second of the two trusts created in the will a legal trust? The applicable provisions of the act are:

"Section 4. Rule against Perpetuities.

'(a) General. No interest shall be void as a perpetuity except as herein provided.

'(b) Void Interest—Exceptions. Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events any interest not then vested and any interest in members of a class the membership of which is then subject to increase shall be void. This subsection shall not apply to:

'(1) Interests Exempt at Common Law. Interests which would not have been subject to the common law rule against perpetuities.' . . ."

The rule against perpetuities prohibits creation of future interests or estates which may not vest within a life or lives in being at testator's death and 21 years, plus period of gestation: Lockhart's Estate, 306 Pa. 394; Friday's Estate, 313 Pa. 328. In the present case the vesting is that in the trustee and, of course, that vesting is only for the purpose of carrying out the trust. Notwithstanding the corpus of the trust obviously is not vested within the common-law period above mentioned, is the trust nevertheless a valid trust in perpetuity by reason of its purpose?

Under the common law as recognized in our State a trust for a charitable use may be a valid trust, notwithstanding it is a perpetuity, providing certain conditions in respect of purposes are present. The

laws and institutions of Pennsylvania are built on the foundation of reverence for Christianity (Zeisweiss v. James, 63 Pa. 465) ; whatever is given for the love of God, or for the love of our neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain of everything that is personal, private or selfish, is a gift for a charitable use (Price v. Maxwell, 28 Pa. 23) ; in law, religious and charitable uses mean legal acts done for the promotion of piety among men, or for the purpose of relieving their sufferings, enlightening their ignorance or bettering their condition; such acts courts of equity uphold and effectuate according to the intention of the donor pro saluto populi: Miller v. Porter, 53 Pa. 292. In Funk Estate, 353 Pa. 321, 322-24 the court said:

"A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man.' . . .''

" 'The word "charitable", in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public."

" 'Charitable uses may be unlimited in number and are not to be determined by the application of any narrow criterion. Whether a purpose is charitable must be ascertained from a consideration of all surrounding circumstances. A design to achieve objects beneficial to the community is common to all charitable purposes. . . . The concept of a charity is continually broadening.' "

In England, where the ancestry of the common law lies, for many centuries a bequest of money to be used for the saying of masses for the soul of the testator or of others was held to be illegal as a superstitious use but in 1934, in In re Caus, 1 Ch. 162, a trust for masses was held to be for a charitable use: see Scott on Trusts, §371.5. In Pennsylvania, in Rhymer's Ap., 93 Pa. 142, it was determined that a bequest for masses is for a religious use and in O'Donnell's Estate, 209 Pa. 63, it was definitely decided that a bequest for masses is for a charitable use: see also Jennings' Estate, 20 D. & C. 506. It therefore clearly is the law in Pennsylvania that a bequest for masses is a bequest for a charitable use.

In A. L. I. Restatement of the Law of Trusts, §371, comment *d*, it is said:

"A trust to promote the religious doctrines of a particular sect is charitable. So also, a trust to promote a particular religious doctrine is charitable, although the doctrine is advocated by only a small portion of the community"; this is a law in Pennsylvania: Knight's Estate, 159 Pa. 500; Tollinger Estate, 349 Pa. 393. However, we still have the question of whether the trust in this case is so limited in its purpose as to disqualify it as a valid perpetuity under the common-law rule against perpetuities. In this connection comment *c* and comment *f* to section 375, A. L. I. Restatement of the Law Trusts, are of interest. In comment *c* it is stated:

"When the beneficiaries of the trust are limited to such a small class of persons that the enforcement of the trust is not of benefit to the community, the trust is not a charitable trust even though the purpose of the trust is the relief of poverty or the advancement of education or religion or health. Thus, a trust to assist needy descendants of the settlor, or to educate descendants of the settlor, is not a charitable trust.

On the other hand, a trust for the relief of poverty or the advancement of education which is not so limited, is none the less a charitable trust although by the terms of the trust preference is to be given to descendants of the settlor"; and comment f: "Where a trust is created for the benefit of the members of a class, the mere fact that the trust is to be of perpetual duration, and that the membership in the class is therefore unlimited in extent does not make the trust charitable, if the class is so narrow, and the purposes of the trust are such, that the enforcement of the trust is not beneficial to the community. Thus, as has been stated, a trust for the benefit of the descendants of the settlor, or for such decendants as may be in need, is not charitable. . . ."

In the trust here under consideration it is clear enough that the provision in the will creating the trust seems to limit the beneficiaries to the members of the "Daniel Duffy family" (Daniel Duffy was the father of testatrix here). The word "family" as used by testatrix undoubtedly means the immediate descendants of Daniel Duffy, deceased: see Heck v. Clippenger, 5 Pa. 385; Bair v. Robinson, 108 Pa. 247; Beilstein v. Beilstein, 194 Pa. 152. If we were to stop here the conclusion might be that the field in which the trust is to operate is too narrow to qualify as a valid trust in perpetuity for a charitable use. However, more is to be said as well as considered.

As pointed out in Funk's Est., supra, in ascertaining purpose in dealing with the problem of charitable uses we must take into consideration the surrounding circumstances. In so doing we find that "A trust for the saying of masses for the soul of the settlor or of other persons is charitable, since the religious benefit to be derived from the saying of such masses is, according to the doctrines of the Roman Catholic Church, not confined to the particular souls but extends to the

other members of the church and to the rest of the world" (quoted from comment *g* of §371, A. L. I. Restatement of the Trusts) ; or, as stated in Scott on Trusts, §371.5, second paragraph and last sentence thereof:

"Although the saying of a mass may be for the particular benefit of a specific person who has died, the benefits are not confined to the particular soul but extend to the other members of the church and to all the world, according to the doctrines of the Roman Catholic church."

Testatrix in this case was of the Roman Catholic faith and the presumption is, of course, that she was familiar with the doctrine of the Roman Catholic church in respect of the purpose and the application of the fruit of the mass. While she seems to limit the field to the members of her deceased father's immediate family the fact is the field is, under the doctrine of the Roman Catholic church, so broad as to include not only the individual for whom the mass is celebrated but for the priest and all who are present and all of the faithful, both living and dead: see citation 6, page 1995, §371.5, Scott on Trusts. It is clear therefore that although preference is given in the will to the members of the Daniel Duffy family the mass, under Roman Catholic doctrine, extends far beyond that preference and includes an indefinite number of persons or souls of deceased persons, as the case may be.

In view of what we have said thus far we conclude that the bequest in trust for masses is for a charitable use and is for an indefinite number of beneficiaries, whether living or dead, and therefore is a legal trust in perpetuity under the common-law doctrine against perpetuities. . . .

The transfer inheritance tax has been paid. There is no provision in the will relieving legatees from pay-

ment of this tax. The trust for cemetery care is not subject to the tax but the trust for masses is and also the bequest of household furnishings. As to the tax to be deducted from the trust for masses the original amount of $500 may be paid to the trustee only with the consent of the four residuary legatees. . . .