## Selewicz Estate

*Jacob S. Russin*, for executors.
*Henry Thalenfeld*, for Commonwealth.

LOPATTO, P. J., May 3, 1962.—At the audit of the first and final account of Helen Hornick and Andrew Kooch, executors of the estate of Helen Selewicz or Selewacz, deceased, the executors informed the court that they had made application to the Department of Revenue, Bureau of County Collections, Harrisburg, Pennsylvania, for a certificate of charitable exemption from the transfer inheritance tax, under the Act of May 28, 1956, P. L. (1955) 1757, as amended, on a bequest in decedent's will reading as follows:

"IV. I give and bequeath the sum of One Thousand Dollars to the Miners National Bank of Wilkes-Barre, in trust, to pay the net income therefrom in semi annual instalments to the Pastor of St. Peter and Paul Ukrainian Church, N. River Street, Wilkes-Barre, Pa., for masses for the respose of my soul and the soul of my husband Sam."

This application was processed and then turned down by the bureau as not being a charitable bequest, and the court was requested to determine whether or not the above quoted clause could qualify as a charitable or religious bequest under the 1956 Act.

On March 27, 1962, hearing was had on this matter at which hearing Jacob S. Russin, Esq., represented the executors and Henry Thalenfeld, Esq., the Commonwealth.

At said hearing, a letter directed to executors' counsel was offered in evidence, dated May 9, 1961, from the Bureau of County Collections, Inheritance Tax Division, which was in answer to the application for a certificate of exemption, and which letter reads as follows:

"The charitable exemption application submitted in the above estate on behalf of Pastor of Saint Peter and Paul Ukrainian Church, Wilkes-Barre, Pennsylvania, cannot be favorably acted upon. This is so for the following reasons.

"If the bequest for saying masses is made directly to the church or to a priest who has taken the vow of poverty, then such bequest is not subject to Inheritance Tax. On the other hand, if the bequest is made to a priest who is not under the vow of poverty, then such bequest is subject to Inheritance Tax at the 15% rate."

At the hearing on March 27, 1962, it was determined that the present pastor of St. Peter and Paul Ukrainian Church, North River Street, Wilkes-Barre, Pennsylvania, did not take a vow of poverty. However, it is possible that in the future, a pastor of this church may be one that will take a vow of poverty. This court is of the opinion that whether or not the pastor of a church has taken a vow of poverty is of no consequence in the determination of this matter. It is to be pointed out that this is not a question as to whether this is a tax deduction under the taxing law, but rather whether or not it qualifies as a charitable exemption under the Act of 1956. We must look to the act itself.

The Act of May 28, 1956, P. L. (1955) 1757, pertinent to our problem, reads as follows:

"Section 1.1 . No transfer inheritance tax shall be imposed upon the transfer of any property, real or personal, or of any vested or future interest therein or income therefrom, in trust or otherwise, *to persons*, corporations and organizations where the transfer is by will or by deed, gift or grant, in contemplation of death, made by a resident of this Commonwealth of property situated within this Commonwealth or elsewhere, or made by a nonresident of property within this Commonwealth:

"(a) To or for the use of any *corporation* organized and operated, exclusively, for religious, charitable, scientific, literary or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings which inures to the benefit of any private stock holder

or individual and no substantial part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation.

"(b) To a *trustee* or trustees or fraternal society, order or association operating under the lodge system, but only if such contributions or gifts are to be used by the trustee or trustees or by the fraternal society, order or association, exclusively, for religious, charitable, scientific, literary or educational purposes, or . . ."

From a close scrutiny of the foregoing provisions of the act, the court can only assume that the Commonwealth bases its position that a priest must have taken a vow of poverty in order that the bequest qualifies as a charitable or religious bequest, on that section of the act hereinabove quoted, reading as follows: "(a) . . . no part of the net earnings which inures to the benefit of any private stock holder or individual . . ." We cannot subscribe to this theory first because the section of the act referred to relates to corporations only. The bequest before us was made to a trustee and the beneficiaries specifically were decedent and her husband. The pastor of the church is not a specific beneficiary of the trust, but under the doctrines of the Roman Catholic church, the priest who is the celebrant of the mass is a beneficiary of the fruit of the mass as well as others. "Although the saying of a mass may be for the particular benefit of a specific person who has died, the benefits are not confined to the particular soul but extend to the other members of the church and to all the world, according to the doctrines of the Roman Catholic church." See Scott on Trusts, §371.5.

The priest is the instrument of the church whose duty it is to perform the ritual. The income from the trust is to be used to pay for the costs of the masses read. What is to be done with the costs of the masses depends again upon the doctrine of the church, whether

it be paid to an individual priest or not. If the priest has not taken the vows of poverty, he may keep it, depending upon the doctrines of the church. If the priest has taken a vow of poverty, under the doctrines of the church he cannot keep it. The income to be distributed by the trustee is undoubtedly for a religious purpose. Section (b) above quoted pertains directly to trustees and states: ". . . but only if such contributions or gifts are to be used by the trustee or trustees . . . exclusively, for religious, charitable . . . purposes."

It is generally understood that prior to the Act of May 28, 1956, P. L. (1955) 1757, no exemption was allowed for religious or charitable bequests, and such bequests were subject to the imposition of a transfer inheritance tax. However, since the enactment of the 1956 act, charitable and religious bequests are exempt from such tax.

In Duffy Estate, 2 D. & C. 2d 250, 5 Fiduc. Rep. 77, Judge Gangloff presented a discourse on charitable and religious bequests which we feel aptly solves the problem before us. While his opinion was written to uphold a trust for masses in perpetuity, which we have in the instant case, his decision as to the imposition of a transfer inheritance tax on the bequest was that said bequest was subject to said tax. However, what is to be noted is that the case decided by Judge Gangloff was a case prior to the Transfer Inheritance Tax Act of 1956, and, at that time, all religious and charitable bequests were subject to the tax.

We are of the opinion that the bequest in the instant case is a religious and charitable bequest, and under the Act of May 28, 1956, P. L. (1955) 1757, is not subject to the imposition of a transfer inheritance tax.

To substantiate our position in this matter, we quote from the decision of Judge Gangloff, in Duffy Estate, supra, at page 253, et seq.:

"In England, where the ancestry of the common law

lies, for many centuries a bequest of money to be used for the saying of masses for the soul of the testator or of others was held to be illegal as a superstitious use but in 1934, in In re Caus, 1 Ch. 162, a trust for masses was held to be for a charitable use: see Scott on Trusts, §371.5. In Pennsylvania, in Rhymer's Ap., 93 Pa. 142, it was determined that a bequest for masses is for a religious use and in O'Donnell's Estate, 209 Pa. 63, it was definitely decided that a bequest for masses is for a charitable use: see also Jennings' Estate, 20 D. & C. 506. It therefore clearly is the law in Pennsylvania that a bequest for masses is a bequest for a charitable use.

"In A. L. I. Restatement of the Law of Trusts, §371, comment *d*, it is said:

" 'A trust to promote the religious doctrines of a particular sect is charitable. So also, a trust to promote a particular religious doctrine is charitable, although the doctrine is advocated by only a small portion of the community'; this is a law in Pennsylvania: Knight's Estate, 159 Pa. 500; Tollinger Estate, 349 Pa. 393. However, we still have the question of whether the trust in this case is so limited in its purpose as to disqualify it as a valid perpetuity under the common-law rule against perpetuities. In this connection comment *c* and comment *f* to section 375, A. L. I. Restatement of the Law of Trusts, are of interest. In comment *c* it is stated:

" 'When the beneficiaries of the trust are limited to such a small class of persons that the enforcement of the trust is not of benefit to the community, the trust is not a charitable trust even though the purpose of the trust is the relief of poverty or the advancement of education or religion or health. Thus, a trust to assist needy descendants of the settlor, or to educate descendants of the settlor, is not a charitable trust. On the other hand, a trust for the relief of poverty or the

advancement of education which is not so limited, is none the less a charitable trust although by the terms of the trust preference is to be given to descendants of the settlor'; and comment *f:* 'Where a trust is created for the benefit of the members of a class, the mere fact that the trust is to be of perpetual duration, and that the membership in the class is therefore unlimited in extent does not make the trust charitable, if the class is so narrow, and the purposes of the trust are such, that the enforcement of the trust is not beneficial to the community. Thus, as has been stated, a trust for the benefit of the descendants of the settlor, or for such descendants as may be in need, is not charitable . . .'

"In the trust here under consideration it is clear enough that the provision in the will creating the trust seems to limit the beneficiaries to the members of the 'Daniel Duffy family' (Daniel Duffy was the father of the testatrix here). The word 'family' as used by testatrix undoubtedly means the immediate descendants of Daniel Duffy, deceased: see Heck v. Clippenger, 5 Pa. 385; Bair v. Robinson, 108 Pa. 247; Beilstein v. Beilstein, 194 Pa. 152. If we were to stop here the conclusion might be that the field in which the trust is to operate is too narrow to qualify as a valid trust in perpetuity for a charitable use. However, more is to be said as well as considered.

"As pointed out in Funk's Est., supra, in ascertaining purpose in dealing with the problem of charitable uses, we must take into consideration the surrounding circumstances. In so doing we find that 'A trust for the saying of masses for the soul of the settlor or of other persons is charitable, since the religious benefit to be derived from the saying of such masses is, according to the doctrines of the Roman Catholic Church, not confined to the particular souls but extends to the other members of the church and to the rest of the world' (quoted from comment *g* of §371, A. L. I. Re-

statement of the Trusts) ; or, as stated in Scott on Trusts, §371.5, second paragraph and last sentence thereof:

" 'Although the saying of a mass may be for the particular benefit of a specific person who has died, the benefits are not confined to the particular soul but extend to the other members of the church and to all the world, according to the doctrines of the Roman Catholic church.'

"Testatrix in this case was of the Roman Catholic faith and the presumption is, of course, that she was familiar with the doctrine of the Roman Catholic church in respect of the purpose and the application of the fruit of the mass. While she seems to limit the field to the members of her deceased father's immediate family the fact is the field is, under the doctrine of the Roman Catholic church, so broad as to include not only the individual for whom the mass is celebrated but for the priest and all who are present and all of the faithful, both living and dead: see citation 6, page 1995, §371.5, Scott on Trusts. It is clear therefore that although preference is given in the will to the members of the Daniel Duffy family the mass, under Roman Catholic doctrine, extends far beyond that preference and includes an indefinite number of persons or souls of deceased persons, as the case may be."

The beneficiaries of the instant trust, to wit, decedent and her husband, are members of St. Peter and Paul Ukrainian Church, Byzantine Rite, in union with the Roman Catholic church. The bequest in trust for masses is for a charitable use and is for an indefinite number of beneficiaries, whether living or dead, under the doctrines of the Roman Catholic church.

It is hereby ordered, adjudged and decreed that paragraph IV of decedent's will, hereinabove quoted, creates a charitable trust in perpetuity, and, as such, under the Act of May 28, 1956, P. L. (1955) 1757, as

amended, is not subject to the imposition of a transfer inheritance tax, and the Department of Revenue, Bureau of County Collections, Harrisburg, Pennsylvania, is directed to issue a certificate of charitable exemption from the transfer inheritance tax on this bequest; this decree to become final within ten days unless exceptions are filed.